[No. 69475-3. En Banc.]
Argued September 5, 2000. Decided July 11, 2002.

ISLA VERDE INTERNATIONAL HOLDINGS, INC., ET AL., *Respondents*, v. THE CITY OF CAMAS, *Petitioner*.

742

744

W. Dale Kamerrer (of Law, Lyman, Daniel, Kamerrer & Bogdanovich), for petitioner.

Le Anne M. Bremer (of Miller Nash, L.L.P.), for respondents.

Bob C. Sterbank on behalf of Washington State Association of Municipal Attorneys, amicus curiae.

Timothy M. Harris on behalf of Pacific Legal Foundation and Building Industry Association of Washington, amici curiae.

MADSEN, J. — This is an action brought under the Land Use Petition Act by a developer challenging the legality of conditions imposed by the City of Camas for approval of a preliminary plat for a residential subdivision. The challenged conditions include a 30 percent "open space" set aside and provision of a secondary limited access road into the proposed development for emergency vehicles. The Clark County Superior Court ruled on constitutional and statutory grounds that both conditions are unlawful. The Court of Appeals affirmed as to the open space requirement, holding that it constitutes an unconstitutional taking, but reversed as to the secondary access road, upholding this condition. We affirm the Court of Appeals, although in part on different grounds. We conclude that the open space set aside condition violates RCW 82.02.020, and thus do not reach arguments respecting the constitutionality of this requirement. We hold that the developer has failed to establish unconstitutionality or other invalidity of the secondary access road condition.

FACTS

In March 1995, the developer, Isla Verde International Holdings, Inc., and Connaught International Holdings, Inc.

(together Isla Verde), submitted a preliminary plat application for a proposed 32-lot subdivision, Dove Hill, on 13.4 acres located in the City of Camas (City), in Clark County. The Director of Public Works for the City issued a determination of nonsignificance for the project. The plat application was later amended to include 51 lots.

Isla Verde planned to extend an existing road, Sierra Lane, into the new subdivision to provide the only access. Sierra Lane would be "stubbed" at the north edge of the development, with plans that it be extended when property to the north of Dove Hill was developed.

The Camas Planning Commission considered Isla Verde's application for preliminary plat approval at several meetings. A number of local residents testified that Sierra Lane often becomes impassable in winter conditions, and that residents of a subdivision south of the proposed subdivision have to park their vehicles at the bottom of the hill because the road becomes impassable. Several residents expressed concerns about fire safety issues. The Camas Fire Marshal also spoke about fire protection. He described the steep-sloped nature of the property, and the danger of wildfires in the area.[1] He asked for a secondary access road for emergency vehicles, describing access into Dove Hill as a very bad situation.

The Planning Commission considered how the proposed subdivision would satisfy the City's "open space" ordinance, former Camas Municipal Code (CMC) 18.62.020 (1991) (repealed Mar. 2002),[2] which requires that every proposed subdivision in the city must retain 30 percent of its area as

---

[1] Isla Verde identified the steepest as having about a 30 percent slope.

[2] Former Camas Municipal Code (CMC) 18.62.020 provides in part:

A. Proposals for lands within the city that are zoned for single-family or multifamily residential use shall retain a minimum of thirty percent of the site as open space.

B. For the purpose of this section, "open space(s)" shall be defined to mean areas set aside and suitable for active or passive recreation; and areas maintained in a natural state, providing habitat for wildlife, and/or containing significant trees and vegetation. This requirement shall be in addition to any area required to be dedicated to meet standards for the provision of parks, schools, open space or other facilities except that the city

open space. A June 16, 1995, staff report presented at the June 20, 1995, Planning Commission meeting included findings that, due to its location and configuration, the developer would meet only 37 percent of the total required acreage for open space. The remainder would be satisfied by a "buy down," i.e., a payment partially in lieu of the set aside, as permitted within the discretion of the Camas City Council by CMC 17.12.090(E) (1991).[3] The report said that wildlife would be affected by the development, but a notation added that this comment was made with regard to the original 32-lot proposal. The report also included a notation that a concern had arisen about permitting a "buy down" in lieu of a full 30 percent open space set aside. This is evidently a reference to a June 12, 1995, letter from the City Administrator to the Assistant City Engineer/City Planner recommending that the Planning Commission approve a plat design with a full 30 percent open space set aside. The open space would largely consist of steep wooded slopes. The City Administrator explained that the City Council's recent decisions on proposed subdivisions had

---

may allow up to half of the required open space to be credited toward the open space network.

C. To the extent possible, open space areas on a site should contain forested areas, significant trees, wildlife habitat for protected species, and any environmentally sensitive areas located on the site as identified on the city sensitive areas maps or discovered in the field. Where possible, individual open space areas should be contiguous to other existing or planned open spaces so as to permit creation of a larger contiguous area or a continuous corridor. Except where developed for active recreation, open space areas are to be maintained in a natural and undisturbed state.

D. Open space areas shall be protected and preserved through a permanent protective mechanism acceptable to the city. This may include placing the open space area in a separate tract; execution of a protective easement; or dedication to a public agency or public or private land trust. The mechanism or agreement shall provide for maintenance.

[3] CMC 17.12.090(E) provides:

E. Location of required project open space and open space network, if applicable. If the city determines that the location, quality or extent of the required project open space, particularly on smaller plats or short plats, would not fulfill the intent or purpose of useful common open space, that requirement may be waived. If the requirement is waived, no increase in density can occur unless the city determines that a payment of an equivalent fee in lieu of the required project open space is appropriate. Such fee will be placed in the city's impact fee fund for open space acquisition and will not be subject to refund.

generally preferred the open space set aside rather than the optional "buy down." He said that a 30 percent set aside would add about four acres to the City's open space network, would be consistent with the objectives of the open space network, and would be consistent with past council decisions.

The Planning Commission approved the application, subject to a number of conditions, including construction of a secondary temporary access road from the end of NW Sierra Lane to an acceptable point to the east. The recommended conditions also contemplated that a homeowner's association would be required and that it would be responsible for maintenance of the open space areas.

On June 26, 1995, Isla Verde's application came before the Camas City Council for a final decision. The Council permitted local residents to comment on the application, and, with regard to a secondary access road, the same concerns regarding fire protection and access that were raised in the Planning Commission's meetings were voiced before the Council. The Fire Marshal again expressed concerns about fire protection and access to the proposed development. He also pointed out that the Uniform Fire Code required more than one access road for fire fighting equipment when a determination was made by the fire chief "that access by a single road may be impaired by vehicle congestion, condition of terrain, climatic conditions or other factors that could limit access." Clerk's Papers (CP) at 107. The neighbor to the east of the proposed subdivision stated that she would not grant an easement for a secondary access road over her property.

With regard to the open space set aside, several people spoke about wildlife at the site. Local resident Richard Palmer (the president of the homeowners' association for the subdivision just south of Dove Hill) presented a letter from an area habitat biologist with the Washington State Department of Fish and Wildlife addressed to Mr. Palmer. The biologist's letter stated that adequate open space within the Dove Hill subdivision was critical to survival of

wildlife species. The biologist referred to a conversation with Palmer where Palmer told the biologist that several wildlife species had been seen at the site, including the pileated woodpecker, a candidate for listing as threatened, endangered or sensitive,[4] and the ringneck snake, which had been found in Clark County only at one other location and was classified as a monitored species. The letter stated that Fish and Wildlife recommended that the full 30 percent set aside be required. Another resident also referred to this letter and urged that the full 30 percent set aside for open space be required.

Isla Verde objected to the secondary access road requirement, stating that satisfying the condition was impossible because Isla Verde would be unable to obtain easements over neighboring property to construct the road. As to open space, as noted, Isla Verde proposed less than a 30 percent set aside,[5] with a "buy down" to make up the difference. Isla Verde also objected to any separate impact fees for parks and open spaces. Chapter 3.88 CMC provides for imposition of impact fees to help pay for the cost of public facilities to serve new growth and development, and CMC 3.88.070 specifically allows impact fees for park and recreational facilities and open space.

The City Council decided to delay its decision until after an on-site visit, which occurred July 5, 1995. The Council then initially voted to deny Isla Verde's application because of fire safety concerns, but on July 24, 1995, reconsidered. It approved the preliminary plat application subject to the condition recommended by the Planning Commission for a secondary limited access road. It did not, however, specify where this road must be constructed. The City Council also

---

[4] The June 16, 1995, staff report states that the question regarding the status of the pileated woodpecker had been resolved and that the species is considered a candidate species and is neither threatened nor endangered according to state and national species lists.

[5] At the time the preliminary plat application came before the City Council, the proposed 51-lot plat map stated on its face that it provided .4 acres of open space, while the City Council's findings were that a 1.49-acre set aside was provided for. Both figures are considerably less than the 4-acre set aside necessary to meet the 30 percent requirement of former CMC 18.62.020.

required a full 30 percent open space set aside, with no "buy down." The City's decision on the application does not mention any impact fees imposed pursuant to chapter 3.88 CMC.

Isla Verde petitioned for review of the City's decision under the Land Use Petition Act (LUPA), chapter 36.70C RCW. Following review, the Clark County Superior Court entered an order holding that the secondary access road condition violates substantive due process and chapter 64.40 RCW, because the condition is impossible to satisfy, unduly burdensome, arbitrary and capricious, and denies all viable use of the property. The court held that the open space set aside constitutes a taking under the state constitution and a violation of RCW 82.02.020 and chapter 64.40 RCW, because the City made no individualized determination that the 30 percent set aside requirement is necessary to mitigate an impact of the development, the condition is disproportionate to the impact caused by the subdivision, and the City has not established a need for additional open space within the city limits as a result of the proposed development. Finally, the court held that the City's imposition of a parks impact fee and an open space impact fee was also unlawful, despite the lack of any such condition in the City's written decision. The City sought reconsideration, offering evidence to show the reason for enactment of the open space ordinance with its 30 percent requirement. The superior court declined to consider the additional evidence and denied a motion for reconsideration.

The Court of Appeals affirmed the superior court's ruling that the open space set aside condition constitutes an unconstitutional taking.[6] The Court of Appeals upheld the secondary access road condition, however. Finally, that court concluded that since the City had not assessed any impact fees under chapter 3.88 CMC, the issue of whether they could lawfully be imposed was not ripe for adjudica-

---

[6] Although the superior court had found a taking under our state constitution, the Court of Appeals found a taking in violation of the Fifth Amendment to the United States Constitution.

tion. *Isla Verde Int'l Holdings, Inc. v. City of Camas*, 99 Wn. App. 127, 990 P.2d 429 (1999). The City then sought discretionary review by this court.

## ANALYSIS

 Review is under the LUPA, chapter 36.70C RCW. This court stands in the same position as the superior court. *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 176, 4 P.3d 123 (2000). Review is limited to the record before the City Council. *Citizens for Responsible & Organized Planning v. Chelan County*, 105 Wn. App. 753, 758, 21 P.3d 304 (2001); *Kahuna Land Co. v. Spokane County*, 94 Wn. App. 836, 841, 974 P.2d 1249 (1999). The potentially relevant standards of review in this case are set forth in RCW 36.70C.130(1), which authorize invalidation of the City's decision to impose the disputed conditions if that decision (1) is an erroneous interpretation of the law; (2) is not supported by substantial evidence; (3) is a clearly erroneous application of the law to the facts; or (4) violates the constitutional rights of the party seeking relief.[7] The court may grant relief only if Isla Verde, the party seeking relief from the land use decision, has carried the burden of establishing that one of these standards has been met. RCW 36.70C.130. Statutory construction is a question of law reviewed de novo under the error of law standard. *Wenatchee Sportsmen*, 141 Wn.2d at 176. In order to conclude that substantial evidence supports the factual findings, there must be a sufficient quantity of evidence in the

---

[7] RCW 36.70C.130(1) provides in relevant part:

(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

(d) The land use decision is a clearly erroneous application of the law to the facts.

. . . .

(f) The land use decision violates the constitutional rights of the party seeking relief.

record to persuade a reasonable person that the declared premise is true. *Id.*

## Open Space Set Aside Condition

■ The first issue is whether the 30 percent open space set aside condition is valid. As noted, the superior court determined that the open space set aside condition on preliminary plat approval violates state constitutional and statutory provisions, including RCW 82.02.020. The Court of Appeals held that the condition violates the takings clause of the Fifth Amendment to the United States Constitution. Although the Court of Appeals decision rests on constitutional grounds, the condition violates RCW 82.02-.020, as the superior court determined. Accordingly the Court of Appeals should not have reached the constitutional question.

We adhere to the fundamental principle that if a case can be decided on nonconstitutional grounds, an appellate court should refrain from deciding constitutional issues. *See State v. Speaks*, 119 Wn.2d 204, 207, 829 P.2d 1096 (1992) (although Court of Appeals decided constitutional issue, this court declined to reach constitutional issue where case was resolvable on statutory grounds); *Tunstall v. Bergeson*, 141 Wn.2d 201, 210, 5 P.3d 691 (2000) (where issue may be resolved on statutory grounds, court will avoid deciding issue on constitutional grounds); *Tommy P. v. Bd. of County Comm'rs*, 97 Wn.2d 385, 391, 645 P.2d 697 (1982) (where case can be resolved on other grounds, court will not reach constitutional issue); *Senear v. Daily Journal-Am.*, 97 Wn.2d 148, 152, 641 P.2d 1180 (1982) (same); *Ohnstad v. City of Tacoma*, 64 Wn.2d 904, 907, 395 P.2d 97 (1964) (same); *see also Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit Valley*, 135 Wn.2d 542, 546, 958 P.2d 962 (1998) (because the case was decided on statutory grounds, constitutional issues were not reached); *State v. Faford*, 128 Wn.2d 476, 481, 910 P.2d 447 (1996) (same); *In re Dependency of J.B.S.*, 123 Wn.2d 1, 7, 863 P.2d 1344 (1993)

(same); *In re Pers. Restraint of Moore*, 116 Wn.2d 30, 32, 803 P.2d 300 (1991) (same).

RCW 82.02.020 generally provides, with some exceptions, that the state preempts the field of imposing certain taxes. The statute then states, in relevant part: "Except as provided in RCW 82.02.050 through 82.02.090, no county, city, town, or other municipal corporation shall impose any tax, fee, or charge, either direct or indirect, on . . . the development, subdivision, classification, or reclassification of land." RCW 82.02.020.[8] There are, besides the involuntary impact fees permitted under RCW 82.02.050 through RCW 82.02.090,[9] three exceptions to the prohibition against

---

[8] Although some earlier cases, including *San Telmo Associates v. City of Seattle*, 108 Wn.2d 20, 735 P.2d 673 (1987), turned on whether a payment was an unauthorized tax as opposed to a valid regulatory fee or charge, it has been clear since *R/L Associates v. City of Seattle*, 113 Wn.2d 402, 780 P.2d 838 (1989) that this court interprets the statute according to its plain terms, thus including all charges without regard to whether the payment is a tax or not.

[9] RCW 82.02.020 was amended, and RCW 82.02.050 through .090 were enacted, as part of the Growth Management Act of 1990. Laws of 1990, 1st Ex. Sess., ch. 17, §§ 42-44, 46-48. Most cases concerning RCW 82.02.020 involved prior versions of the statute, and do not concern the involuntary fees that may be imposed. *E.g.*, *Henderson Homes, Inc. v. City of Bothell*, 124 Wn.2d 240, 877 P.2d 176 (1994); *Trimen Dev. Co. v. King County*, 124 Wn.2d 261, 877 P.2d 187 (1994). The fact that RCW 82.02.050 through .090 create another exception to the general prohibition in RCW 82.02.020 has been recognized, however. *View Ridge Park Assocs. v. City of Mountlake Terrace*, 67 Wn. App. 588, 596, 839 P.2d 343 (1992); *see generally* 17 William B. Stoebuck, Washington Practice, Real Estate: Property Law § 5.5, at 277-78 (1995). Impact fees under RCW 82.02.050 through .090 may be imposed on development activity by counties, cities, and towns that are required to or choose to plan under RCW 36.70A.040 as part of public facilities financing. RCW 82.02.050(2). The impact fees may be imposed only for system improvements reasonably related to the new development, shall not exceed a proportionate share of system improvements reasonably related to the new development, and the improvements must reasonably benefit the new development. RCW 82.02-.050(3)(a), (b), (c). "System improvements" are public facilities included in the capital facilities plan to provide service to service areas within the community at large, in contrast to project improvements. RCW 82.02.090(9). "Service area[s]" are defined geographic areas in which a defined set of public facilities provide service to development within the area. RCW 82.02.090(8). "Public facilities" are capital facilities owned or operated by government entities: public streets and roads, publicly owned parks, open space, and recreation facilities, school facilities, and fire protection facilities unless they are part of a fire protection district. RCW 82.02.090(7). "Project improvements" are site improvements and facilities for a particular development project, and are needed for the use and convenience of the occupants and users of the project. RCW 82.02.090(6). No improvement or facility in an approved capital facilities plan shall be considered a project improvement. *Id.* RCW 82.02.060(1)(c) states the Legislature's intent that impact fees are

direct or indirect taxes, fees or charges on the development or subdivision of land (or classification or reclassification). RCW 82.02.020 "does not preclude dedications of land or easements within the proposed development or plat which the county, city, town, or other municipal corporation can demonstrate are reasonably necessary as a direct result of the proposed development or plat to which the dedication of land or easement is to apply." RCW 82.02.020. RCW 82.02.020 also permits voluntary agreements that allow a payment in lieu of dedication of land or to mitigate a direct impact that is a consequence of a proposed development, subdivision or plat. In both instances, payment may be required as part of a voluntary agreement only where the county, city, town, or other municipal corporation establishes it is reasonably necessary as a direct result of the proposed development or plat.[10]

---

imposed through established procedures and criteria so that a development does not pay arbitrary or duplicative fees for the same impact.

[10] RCW 82.02.020 provides in relevant part:

Except only as expressly provided in chapters 67.28 and 82.14 RCW, the state preempts the field of imposing taxes upon retail sales of tangible personal property, the use of tangible personal property, parimutuel wagering authorized pursuant to RCW 67.16.060, conveyances, and cigarettes, and no county, town, or other municipal subdivision shall have the right to impose taxes of that nature. Except as provided in RCW 82.02.050 through 82.02.090, no county, city, town, or other municipal corporation shall impose any tax, fee, or charge, either direct or indirect, on the construction or reconstruction of residential buildings, commercial buildings, industrial buildings, or on any other building or building space or appurtenance thereto, or on the development, subdivision, classification, or reclassification of land. However, this section does not preclude dedications of land or easements within the proposed development or plat which the county, city, town, or other municipal corporation can demonstrate are reasonably necessary as a direct result of the proposed development or plat to which the dedication of land or easement is to apply.

This section does not prohibit voluntary agreements with counties, cities, towns, or other municipal corporations that allow a payment in lieu of a dedication of land or to mitigate a direct impact that has been identified as a consequence of a proposed development, subdivision, or plat. A local government shall not use such voluntary agreements for local off-site transportation improvements within the geographic boundaries of the area or areas covered by an adopted transportation program authorized by chapter 39.92 RCW. Any such voluntary agreement is subject to the following provisions:

(1) The payment shall be held in a reserve account and may only be expended to fund a capital improvement agreed upon by the parties to mitigate the identified, direct impact;

■ RCW 82.02.020 requires strict compliance with its terms. *Trimen Dev. Co. v. King County*, 124 Wn.2d 261, 270, 877 P.2d 187 (1994); *R/L Assocs. v. City of Seattle*, 113 Wn.2d 402, 409, 780 P.2d 838 (1989). A tax, fee, or charge, either direct or indirect, imposed on development is invalid unless it falls within one of the exceptions specified in the statute. *Henderson Homes, Inc. v. City of Bothell*, 124 Wn.2d 240, 247, 877 P.2d 176 (1994) (citing *R/L Assocs.*, 113 Wn.2d at 409).

The superior court held that the open space set aside condition violates RCW 82.02.020 because there has been no individualized determination that the 30 percent set aside requirement is necessary to mitigate an impact of the development, the condition is disproportionate to the impact caused by the subdivision, and the City has not demonstrated any need for additional open space arising from the development. In his oral ruling, the superior court judge noted that the statute permits dedications of land or easements provided the City can establish that they are reasonably necessary as a direct result of the proposed development. He also noted the statutory requirement that payments in lieu of dedication also must be reasonably necessary as a direct result of the proposed development. The judge said, "I didn't find anything in the record that showed that there was any consideration of the direct effect of this development to serve as a basis for imposing the 30 percent." Verbatim Report of Proceedings (June 28, 1996) at 102.

■ As noted, the burden of proof under RCW 36.70C-.130(1) is on Isla Verde, while under RCW 82.02.020 the

(2) The payment shall be expended in all cases within five years of collection; and

(3) Any payment not so expended shall be refunded with interest at the rate applied to judgments to the property owners of record at the time of the refund; however, if the payment is not expended within five years due to delay attributable to the developer, the payment shall be refunded without interest.

No county, city, town, or other municipal corporation shall require any payment as part of such a voluntary agreement which the county, city, town, or other municipal corporation cannot establish is reasonably necessary as a direct result of the proposed development or plat.

burden of establishing that a condition is reasonably necessary as a direct result of the proposed development is on the City. Keeping these burdens in mind, we address the arguments advanced by the City, the petitioner here, as to why the open space condition is a lawful condition. The City argues that the open space set aside does not violate RCW 82.02.020 because it does not impose a tax, fee or charge on development. Instead, the City maintains, the set aside is a police power based condition imposed pursuant to RCW 58.17.110.[11] The City says that RCW 82.02.020 recognizes the authority of cities to require dedication for police power purposes, provided they are reasonably necessary as a direct result of the proposed development or plat. The City says that the necessary connection between a required dedication and the impact of Isla Verde's proposed subdivi-

---

[11] RCW 58.17.110 provides in part:

(1) The city, town, or county legislative body shall inquire into the public use and interest proposed to be served by the establishment of the subdivision and dedication. It shall determine: (a) If appropriate provisions are made for, but not limited to, the public health, safety, and general welfare, for open spaces, drainage ways, streets or roads, alleys, other public ways, transit stops, potable water supplies, sanitary wastes, parks and recreation, playgrounds, schools and schoolgrounds, and shall consider all other relevant facts, including sidewalks and other planning features that assure safe walking conditions for students who only walk to and from school; and (b) whether the public interest will be served by the subdivision and dedication.

(2) A proposed subdivision and dedication shall not be approved unless the city, town, or county legislative body makes written findings that: (a) Appropriate provisions are made for the public health, safety, and general welfare and for such open spaces, drainage ways, streets or roads, alleys, other public ways, transit stops, potable water supplies, sanitary wastes, parks and recreation, playgrounds, schools and schoolgrounds and all other relevant facts, including sidewalks and other planning features that assure safe walking conditions for students who only walk to and from school; and (b) the public use and interest will be served by the platting of such subdivision and dedication. If it finds that the proposed subdivision and dedication make such appropriate provisions and that the public use and interest will be served, then the legislative body shall approve the proposed subdivision and dedication. Dedication of land to any public body, provision of public improvements to serve the subdivision, and/or impact fees imposed under RCW 82.02.050 through 82.02.090 may be required as a condition of subdivision approval. Dedications shall be clearly shown on the final plat. No dedication, provision of public improvements, or impact fees imposed under RCW 82.02.050 through 82.02.090 shall be allowed that constitutes an unconstitutional taking of private property. The legislative body shall not as a condition to the approval of any subdivision require a release from damages to be procured from other property owners.

sion has been established legislatively and by evidence in the record.[12]

■ ■ Initially, although some of the City's argument equates the open space set aside condition to a dedication for purposes of RCW 82.02.020, it maintains that the set aside is not actually a dedication.[13] However, the question we must answer is whether the set aside constitutes a tax, fee or charge within the meaning of the statute. The meaning of RCW 82.02.020 is a question of law reviewed de novo. *Wenatchee Sportsmen*, 141 Wn.2d at 176; *see also State v. Breazeale*, 144 Wn.2d 829, 837, 31 P.3d 1155 (2001); *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001). The court's fundamental objective is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent. *J.M.*, 144 Wn.2d at 480. The question whether a tax, fee or charge is involved also involves application of the law to the facts.

■ For a number of reasons we disagree with the City's assertion that the set aside condition is not a tax, fee, or charge within the meaning of RCW 82.02.020. The exclusionary language of the statute demonstrates that the prohibited charges are not limited to monetary charges. Specifically, the statute provides that a dedication of land or easement is excluded from the statute's prohibitions if reasonably necessary as a direct result of the proposed development. The statute thus contemplates that a required dedication of land or easement is a tax, fee or charge.

---

[12] The briefing to this court principally concerns constitutional issues. The City's argument respecting RCW 82.02.020 appears in its appellant's brief to the Court of Appeals.

[13] Although there has been some dispute about the nature of the set aside, the City Council's written findings and decision expressly provide that Isla Verde must comply "with all standard and special conditions set forth in the staff report [of June 16, 1995] that are not inconsistent with these findings, conclusions and decision." Clerk's Papers (CP) at 9. The staff report includes recommended conditions, including, as noted, that a homeowners' association be required and that "[t]he open space area within this development will be owned and maintained by the homeowner's association." Dove Hill Subdivision File Records at 114. These conditions are consistent with the City Council's written decision, and thus they apply.

Further, this court has recognized that for purposes of RCW 82.02.020 a tax, fee, or charge can be in kind as well as in dollars. *San Telmo Assocs. v. City of Seattle*, 108 Wn.2d 20, 24, 735 P.2d 673 (1987) (requirements that owners of low income rental units provide relocation notice and assistance, and replacement of a specified percentage of the low income housing with other suitable housing or contributing to the low income housing replacement fund in lieu thereof, when residential units are demolished or redeveloped to other use violated RCW 82.02.020 as indirect charge on development).

The open space condition here is comparable to conditions in a number of cases analyzed under RCW 82.02.020. *E.g.*, *Vintage Constr. Co. v. City of Bothell*, 135 Wn.2d 833, 959 P.2d 1090 (1998) (RCW 82.02.020 applicable where ordinance required dedication of five percent of land for parks or payment of $400 per lot in lieu thereof; developer entered a "voluntary agreement" to pay in lieu fees) (adopting opinion of the Court of Appeals in *Vintage Constr. Co. v. City of Bothell*, 83 Wn. App. 605, 922 P.2d 828 (1996)); *Trimen*, 124 Wn.2d 261 (RCW 82.02.020 applicable where ordinance required dedication of land for open space or payment of fee in lieu thereof; developer paid in lieu fees under voluntary agreement); *Henderson Homes*, 124 Wn.2d 240 (RCW 82.02.020 applicable where condition required payment of $400 per lot park mitigation fee); *United Dev. Corp. v. City of Mill Creek*, 106 Wn. App. 681, 698-99, 26 P.3d 943 (RCW 82.02.020 applicable where condition required frontage improvements for drainage along adjacent boulevard), *review denied*, 145 Wn.2d 1002 (2001); *Castle Homes & Dev., Inc. v. City of Brier*, 76 Wn. App. 95, 882 P.2d 1172 (1994) (RCW 82.02.020 applicable where voluntary agreement required payment of $3,000 per lot or provision of offsite traffic improvements); *View Ridge Park Assocs. v. City of Mountlake Terrace*, 67 Wn. App. 588, 839 P.2d 343 (1992) (RCW 82.02.020 applicable where ordinance required developers to construct onsite recreational facilities or pay a fee in lieu thereof). Indeed, the Camas ordinance

authorizing the set aside condition is quite similar to the ordinance at issue in *Trimen*, which required a dedication or reservation of open space, or a fee in lieu thereof.

We conclude that the open space set aside condition is an in kind, indirect "tax, fee, or charge" on new development.

■ The next question is whether the 30 percent set aside is unlawful under RCW 82.02.020 or whether it falls within an exception. It is, as explained, Isla Verde's burden to show that one of the standards in RCW 36.70C.130(1) applies and requires invalidation of the open space condition. Under RCW 82.02.020, however, the City has the burden of showing that one of the statute's exceptions applies. With these principles in mind, we address the City's justifications for imposing the open space condition.

As mentioned earlier, the City maintains that the open space condition does not require an actual dedication of land to public use. Nevertheless, the City argues that the exception allowing dedication where reasonably necessary as a direct result of the proposed development of plat does apply in this case, and thus no violation of RCW 82.02.020 exists. The City more directly argues that the open space condition is authorized to mitigate direct impacts of the proposed development.

■ We need not decide whether the set aside provisions require a dedication of land for purposes of the exceptions in RCW 82.02.020 because the City has failed to establish that the 30 percent open space set aside is reasonably necessary as a direct result of the proposed subdivision or reasonably necessary to mitigate a direct impact that is a consequence of the proposed subdivision. We note, however, the possibility that just as a tax, fee, or charge on development may be, in kind, a required set aside of the sort required under CMC 18.62.020 and might be deemed equivalent to a dedication for purposes of the statute, given the Legislature's obvious intent to allow charges on devel-

opment where the need for them is a direct result of the development.[14]

The City first urges that its set aside requirement falls within the statutory exception because it has made a valid legislative determination of the need for subdivisions to provide for open space set asides to mitigate consequences of subdivision development. The City relies on *Trimen* for the proposition that such a determination in and of itself satisfies its burden of proving the required connection between the development and the open space condition. The City misreads *Trimen*. In *Trimen*, the county conducted a comprehensive assessment of park needs in a report predating the developer's applications for subdivision approval. *Trimen*, 124 Wn.2d at 274. That report showed a deficit of park acres in the area of the proposed developments and projected a greater deficit as population expanded. *Id.* A dedication or reservation of open space at the figure negotiated by the parties would have resulted in an amount of park land roughly proportional to that which the report showed would be needed for the developments' estimated population. *Id.* The fees in lieu of dedication were thus upheld by this court. Importantly, and contrary to the City's argument here, we said that the county's "fee in lieu of dedication is calculated based on zoning, projected population, and the assessed value of the land that *would have been dedicated or reserved.* [The county's] assessment of fees in lieu of dedication are specific to the site." *Id.* at 275.

Thus, in *Trimen* the fees imposed were reasonably necessary as a direct result of the proposed subdivisions, i.e., the need for park land was directly attributable to the projected population of the developments and the fees were calculated based upon the value of land that would otherwise be required to be dedicated or reserved for parks to

[14] *See Southwick, Inc. v. City of Lacey*, 58 Wn. App. 886, 893-94, 895, 795 P.2d 712 (1990) (RCW 82.02.020's voluntary agreement exceptions show "legislative intent to stop the imposition of general social costs on developers, while at the same time allowing the continued imposition of costs that are directly attributable to the development"; it would be anomalous to allow a municipality to charge a fee to pay for improvements necessitated by developer but not to allow the municipality to require that the developer make the improvements as a condition of site approval).

serve the developments' populations. *Trimen* does not support the City's argument that a legislative determination of the need for open space satisfies the exceptions in RCW 82.02.020.

Nor does RCW 82.02.020. The statute mandates that a municipality must demonstrate that a dedication is "reasonably necessary *as a direct result of the proposed development or plat,*" and also mandates that, in the case of a payment in mitigation of a *"direct impact* that has been identified as a *consequence"* of the proposed development, a municipality must establish that the payment is "reasonably necessary *as a direct result of the proposed development or plat.*" RCW 82.02.020 (emphasis added). We have repeatedly held, as the statute requires, that development conditions must be tied to a specific, identified impact.of a development on a community. *Vintage Constr. Co.,* 83 Wn. App. at 611-12, *opinion adopted in Vintage Constr. Co.,* 135 Wn.2d 833; *Trimen,* 124 Wn.2d at 275; *Henderson Homes,* 124 Wn.2d at 242-44. RCW 82.02.020 does not permit conditions that satisfy a "reasonably necessary" standard for *all* new development collectively; it specifically requires that a condition be "reasonably necessary as a direct result of *the* proposed development or plat." (Emphasis added.) We reject the City's argument that it satisfies its burden under RCW 82.02.020 merely through a legislative determination "of the need for subdivisions to provide for open space set asides . . . as a measure that will mitigate a consequence of subdivision development." Am. Br. of Appellant at 38.

The City also contends, however, that its steep slopes ordinance supports imposition of the open space condition as a mitigation measure. Under the steep slopes ordinance, if a development site has steep slopes it is an environmentally sensitive area, a geotechnical report is required, and mitigation measures may be required. Former CMC 18.61.020(D), (E), (F), (I). The City points out that the open space ordinance states that open space areas should include "environmentally sensitive areas." Former CMC 18.62-.020(C). Isla Verde's property has steep slopes.

One difficulty with the City's contention is that the record does not establish that under the steep slopes ordinance any of the steep slopes here are greater than allowed for development. Former CMC 18.61.050(B)(1). In addition, the geotechnical report prepared for the proposed development concludes that the "property is not within nor part of a potentially unstable slope area." Dove Hill Subdivision File Records at 277. We note that a determination of nonsignificance was issued under the State Environmental Policy Act, chapter 43.21C RCW.[15] Most importantly, while there may be some negative impact on environmentally sensitive areas, the record does not reveal the extent or significance of such an impact. There is no showing on this record that as to this property a 30 percent open space set aside is reasonably necessary to mitigate development impacts on environmentally sensitive steep slopes.

The City next asserts that the record shows a proposed conversion of wooded property to developed property, impact on wildlife, and the City's recent past practice to favor the full 30 percent set aside over "buy downs" justify the 30 percent open space condition for subdivision approval. The City also refers to the City Administrator's letter that describes a 30 percent set aside as conforming to the City's open space network (since the property is wooded, has steep slopes, and wildlife habitat). None of the evidence to which the City refers shows any relation between a 30 percent open space requirement and impacts or effects of Isla Verde's proposed development. Again, it is arguable that there will be some impact on wildlife habitat, and certainly clearing wooded land to build houses will affect the wooded nature of the site. However, there is no showing that a 30 percent open space set aside is required to address these impacts. The fact that the City has recently imposed the full 30 percent set aside rather than allowing "buy downs" is

---

[15] The evidentiary importance of this fact should not be overemphasized. Whether a determination of nonsignificance has or has not been issued is not dispositive. Moreover, insofar as the record shows, a determination of nonsignificance was issued with respect to the 32-lot proposal, not the 51-lot proposal.

irrelevant; it says nothing about why an open space set aside is necessitated by a particular proposed subdivision.

Instead, the open space condition to obtain plat approval is uniformly applied, in the preset amount, regardless of the specific needs created by a given development. The fees or charges authorized under the exceptions in RCW 82.02.020, whether direct or indirect, may not be imposed automatically, but must be tied to a direct impact of the proposed development. *See Henderson Homes*, 124 Wn.2d 240 (payment of a preset $400 per lot fee as a park mitigation fee invalid); *Vintage Constr. Co.*, 83 Wn. App. 605, *opinion adopted in Vintage Constr. Co.*, 135 Wn.2d 833 (condition requiring dedication of five percent of land for park or payment of $400 per lot invalid). Aside from the ordinance requiring a flat 30 percent set aside for every proposed subdivision, there is nothing in the record explaining why 30 percent was chosen as the amount of open space needed in this case.[16]

Finally, the City's claim that RCW 58.17.110 provides police power authority to impose the open space condition does not validate the condition. RCW 58.17.110 requires local governments to ensure that proposed plats make appropriate provisions for the public health, safety and welfare, including open spaces. Although local governments are encouraged to require developers to set aside open space under this statute, nowhere does the platting statute authorize an across the board 30 percent set aside for open space. Recognizing that local governments have the authority to adopt regulations or to withhold plat approval if appropriate provisions have not been made, courts have interpreted RCW 58.17.110 as allowing such

---

[16] The concurrence criticizes the majority for deciding this case under RCW 82.02.020 on what it calls an "inadequate" and an "insufficient" record; the concurrence even goes so far as to say the majority concedes that the record is inadequate. Concurrence at 771, 772. The concurrence misreads the majority. The record is sufficient to decide the issue presented. The problem to which the criticism is more appropriately addressed is the *City's failure* to establish a record that justifies its imposition of the set aside condition on Isla Verde. That is a matter of the City failing to meet its burden of proof, not a matter of an inadequate record on which to make a decision under RCW 82.02.020.

conditions only where the purpose is to mitigate the problems caused by the particular development. *Southwick, Inc. v. City of Lacey*, 58 Wn. App. 886, 892-93, 795 P.2d 712 (1990). Indeed, the City agrees that conditions imposed in accord with RCW 58.17.110 must be necessary as a direct result of the development. RCW 58.17.110 does not authorize the City's condition in this case.[17]

We conclude that the open space set aside condition does not fall within any exception in RCW 82.02.020.

▇▇▇ The City also relies on RCW 35A.63.100 as authority for its 30 percent open space condition. That statute provides municipal authority to code cities to divide the municipality

> into appropriate zones within which specific standards, requirements, and conditions may be provided for regulating the use of public and private land, buildings, and structures, and the location, height, bulk, number of stories, and size of buildings and structures, size of yards, courts, *open spaces*, density of population, ratio of land area to the area of buildings ... setbacks ....

RCW 35A.63.100(2) (emphasis added). As the statute states, ordinances enacted under its authority are "zoning ordinance[s]." *Id.* Although its preamble states that Camas Ordinance 1820 (1991), which includes former CMC 18-.62.020, amends the zoning code to provide for an overlay zone, the body of the ordinance does not simply treat the open space requirement as a zoning requirement. Former CMC 18.62.010(A) first states that the open space condition will be required in areas shown on the zoning map with a use classification of "P." However, it then states, "[i]n *addition*, the standards and requirements of this chapter

---

[17] We also note that by its express terms the City's open space ordinance set aside condition is in addition to any dedications under RCW 58.17.110: "This requirement shall be in addition to any area required to be dedicated to meet standards for the provision of parks, schools, open space or other facilities; except that the city may allow up to half of the required open space to be credited toward the open space network." Former CMC 18.62.020(B). We do not understand the City to have imposed any other open space requirement in this case than the 30 percent set aside, however.

shall apply to *any application or proposal* involving a planned unit development, *subdivision* or short subdivision, or any site with a portion of the site designated for the Open Space Network." *Id.* (emphasis added). The open space ordinance thus applies to *any subdivision*, regardless of zoning, as a condition for subdivision approval, and, as explained, its application here burdens development in the way that is proscribed under RCW 82.02.020.

We hold that the 30 percent open space set aside condition for approval of Isla Verde's plat application violates RCW 82.02.020 and is therefore invalid.

## Secondary Access Road Condition

In its answer to the petition for review, Isla Verde contends that the Court of Appeals erred in upholding the constitutionality of the City's conditioning approval of Isla Verde's plat application on provision of a secondary access road for emergency vehicle use. Isla Verde contends that the condition is impossible to perform and illegally delegates a veto power to the neighbors, and therefore its imposition violates substantive due process. Isla Verde's argument rests on the premise that the access road must be constructed on property to the east of the proposed development, and the owner of that property has stated that she will never grant an easement for a secondary access road. Isla Verde also says that the condition constitutes a taking, because the property is not suitable for any other purpose and therefore imposing a condition on subdivision development that is impossible to perform deprives it of any economically viable use for the property. We agree with the Court of Appeals that the record does not support Isla Verde's claim of impossibility, and therefore its constitutional challenges to the secondary access road condition fail.

Initially, we emphasize that the City's decision does not mandate that the secondary access be provided by a road over the property to the east, as Isla Verde has claimed.

While a city staff report proposed that condition, the City Council's final decision provides only that "the applicant provide a secondary access to the subject real property that is sufficient to permit utilization by emergency vehicles and that satisfies the standards of the Uniform Fire Code for fire apparatus access roads." Dove Hill Subdivision File Records at 149.

Before approving a subdivision development a local governmental entity must consider the adequacy of access to the proposed development and may condition approval of a plat on provision of adequate access. *Lechelt v. City of Seattle*, 32 Wn. App. 831, 835, 650 P.2d 240 (1982); *see* RCW 58.17.110. However, while a municipality has authority to make appropriate provisions for the public health, safety, and welfare, and to condition plat approval accordingly, it does not have authority to require a developer " 'to shoulder an economic burden, which in justice and fairness the public should rightfully bear.' " *Weden v. San Juan County*, 135 Wn.2d 678, 706, 958 P.2d 273 (1998) (quoting *Orion Corp. v. State*, 109 Wn.2d 621, 648-49, 747 P.2d 1062 (1987)).

The burden of proving a violation of substantive due process is on Isla Verde. *Christianson v. Snohomish Health Dist.*, 133 Wn.2d 647, 659-61, 946 P.2d 768 (1997). A land use regulation is not violative of substantive due process where (1) the regulation aims to achieve a legitimate public purpose; (2) the means adopted are reasonably necessary to achieve that purpose; and (3) the regulation is not unduly burdensome on the property owner. *Presbytery of Seattle v. King County*, 114 Wn.2d 320, 331, 787 P.2d 907 (1990). Isla Verde concedes that a secondary access road for emergency vehicles serves a legitimate public purpose. The concession is appropriate. *See, e.g., Kahuna Land Co. v. Spokane County*, 94 Wn. App. 836, 843, 974 P.2d 1249 (1999) (a requirement that there be adequate access to a subdivision serves a legitimate public purpose).

Isla Verde contends, however, that the means to achieve the public purpose are unreasonable. Isla Verde character-

izes the decision to require a secondary access road as the City's "mere desire" to have a second road. Moreover, Isla Verde argues, it is not reasonable to require an impossible or oppressive condition.

The record demonstrates that an additional access route is reasonably necessary to provide fire protection for the residents of the new Dove Hill subdivision. Testimony established that Dove Hill is located in a hazardous fire area and Sierra Lane alone would provide inadequate access to the proposed subdivision in the event of a fire. The testimony of the Camas Fire Marshal and that of a number of local residents was that Sierra Lane can become impassable in inclement weather. The Camas Fire Marshal also testified that Sierra Lane is inadequate under current code requirements for emergency vehicle access. Dove Hill, with its proposed 51 lots, will certainly add to the need for adequate fire and other safety protection; Isla Verde's proposed development will significantly increase the population that must be served. Fire and other rescue vehicles must have adequate access for emergency purposes, and Sierra Lane is not adequate to provide such access to the proposed subdivision.

Although Isla Verde complains that the condition is impossible to satisfy, it relies solely on the testimony of one neighbor to the east who has stated that she will not grant an easement for construction of a secondary access road over her property. There is no evidence that Isla Verde has made any attempts to secure this or any other property prior to filing this suit. Even if this particular property is unavailable, Isla Verde has not shown that all reasonable efforts to meet the secondary access road condition would be frustrated. Moreover, while Isla Verde also cites testimony that it says supports its conclusion that there is no access from the north, it fails to note that the testimony actually indicates a possible alternate route. CP at 252-53.

Thus, Isla Verde has not established that the selected means of achieving a legitimate public purpose—a secondary access road for emergency vehicles—is unreasonable,

either as a mere desire for a second road or as an impossible condition to meet.

As to the third factor in the substantive due process analysis, we consider the (a) nature of the harm to be avoided; (b) the availability and effectiveness of less drastic measures; and (c) the economic loss suffered by the property owner. *Presbytery of Seattle*, 114 Wn.2d at 331. Other nonexclusive factors that may be helpful in the balancing required under the third factor include the seriousness of the public problem, the extent to which the landowner's property contributes to the problem, the degree to which the regulation solves the problem, and the feasibility of less burdensome solutions. *Id.*

The harm to be avoided is an uncontrolled fire within the proposed subdivision or the need for a rescue or other emergency assistance. The problem is serious because, as the record establishes, Sierra Lane is inadequate and human life and property are at risk. Isla Verde maintains, though, that the problem of inadequate access via Sierra Lane existed prior to its proposed development, and it has not contributed to the need for a secondary access road. As explained above, however, the increased population of the proposed subdivision exacerbates the problem, creating a greatly increased risk of harm. The record does not show any less drastic solution that would be as effective as providing a secondary access road.[18]

Isla Verde also contends that the condition is economi-

---

[18] As the Court of Appeals noted, one alternative was mentioned in testimony, i.e., a combination of sprinkler systems and fire-resistant building materials. However, as that court also noted, the record does not contain any evidence that this would be either less expensive or as effective as a limited access road. There is no basis for concluding it would be an available, less drastic, but still effective alternative. (Isla Verde did not agree to this alternative, and does not mention it in appellate briefing.)

Isla Verde does maintain that it proposed a looped road system as a viable alternative. However, while Isla Verde did suggest this possibility in oral comments, it never submitted a proposal to the City with this alternative design. We do not foreclose the possibility that a looped road system could be approved by the City as an alternative. We do conclude, however, that there is insufficient evidence to find on this record that a looped system would provide an effective less drastic measure.

cally fatal to its development. As noted, Isla Verde claims that the condition is impossible to comply with because the neighbor to the east has said she will grant no easement, and thus, Isla Verde maintains, it cannot satisfy the condition and cannot develop its property. As explained, the record does not support Isla Verde's claim of impossibility. While Isla Verde has also argued that any alternate route would be excessively expensive, it cites to no evidence that backs this claim.

Finally, because the condition does not specify any particular access, it clearly does not grant a veto to the neighbor to the east, contrary to Isla Verde's contention. We therefore do not reach the question of the validity of a condition that did grant a "veto."

We conclude, after balancing the various factors, that the secondary road access condition does not violate substantive due process.

Isla Verde also argues that the condition is arbitrary and capricious because it cannot be performed, and all uses on the property are therefore denied. In addition to arguing that substantive due process is thus violated, Isla Verde also argues that chapter 64.40 RCW is violated.

RCW 64.40.020(1) states that "[o]wners of a property interest who have filed an application for a permit have an action for damages to obtain relief from acts of an agency which are arbitrary, capricious, unlawful, or exceed lawful authority." As the Court of Appeals held, the City's act in imposing the secondary access road condition was not arbitrary or capricious. An act is arbitrary or capricious if it is a " ' "wilful and unreasonable action, without consideration and regard for facts or circumstances." ' " *Landmark Dev., Inc. v. City of Roy*, 138 Wn.2d 561, 573, 980 P.2d 1234 (1999) (quoting *Teter v. Clark County*, 104 Wn.2d 227, 237, 704 P.2d 1171 (1985) (quoting *Miller v. City of Tacoma*, 61 Wn.2d 374, 390, 378 P.2d 464 (1963))). " 'Where there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration . . . .' " *Landmark Dev.*, 138 Wn.2d at 573 (quoting *DuPont-Fort*

*Lewis Sch. Dist. No. 7 v. Bruno,* 79 Wn.2d 736, 739, 489 P.2d 171 (1971)).

As explained above, the record does not support Isla Verde's contention that the secondary road access condition is impossible to comply with, and thus the City's action in imposing the condition is not arbitrary or capricious on that ground. Further, when making its decision, the City visited the development site, considered all the evidence, including the Fire Marshal's testimony and recommendations, and the testimony of residents about the poor road conditions of Sierra Lane during winter weather, and additionally considered the problems posed by the topography of the site. The record shows that the City's concerns about public safety in the absence of a secondary access road are legitimate. The City made a reasonable decision when it required Isla Verde to provide a secondary access road for emergency vehicles. We conclude that chapter 64.40 RCW was not violated.

Our analysis makes it unnecessary to address Isla Verde's summary contention that the secondary road access condition constitutes a taking. Because Isla Verde has not supported its claim that compliance is impossible, it has not shown that it is left with no viable economic use of the property.

Finally, we agree with the Court of Appeals that because the City has not actually imposed any parks and open space impact fees, Isla Verde's challenges to the imposition of any such fees is not ripe for judicial review. There is no land use decision reviewable under the LUPA. *See* RCW 36.70C.020; *see also Rhod-A-Zalea & 35th, Inc. v. Snohomish County,* 136 Wn.2d 1, 959 P.2d 1024 (1998) (insofar as constitutional challenge is made). Therefore, we do not address the propriety of any such fees.

## CONCLUSION

The City's condition on plat approval that Isla Verde set aside 30 percent of its property as open space violates RCW

82.02.020 and is therefore invalid. Isla Verde has failed to establish that the City's condition that Isla Verde provide secondary access for emergency vehicles violates substantive due process or is arbitrary and capricious in violation of chapter 64.40 RCW. Accordingly, we uphold that condition. The Court of Appeals decision as to these conditions is affirmed, and this matter is remanded for further proceedings.

SMITH, IRELAND, and BRIDGE, JJ., and GUY, J. Pro Tem., concur.

JOHNSON, J. (concurring) — I agree with the majority's conclusion that the City could require Isla Verde to provide a secondary access road as a condition of development without violating substantive due process or perpetrating a constitutional taking. This conclusion's practical effect is to return the proposed Dove Hill development to the planning stage and to render gratuitous further discussion of other conditions to development.

The real issue presented by this case, and the problem the majority concedes hampers its analysis of the open space condition, is an inadequate record. Majority at 762-63. The majority chooses to analyze the open space condition under RCW 82.02.020. However, I am not convinced RCW 82.02.020 is the proper statutory framework under which to proceed since the record consists primarily of a development proposal rejected for lack of open space, the public testimony surrounding that proposal, and the ordinance directing the City's preservation of open space. Former CAMAS MUN. CODE 18.62.020(A) (1991) (repealed Mar. 2002).

The majority appears most concerned by the city ordinance authorizing payment of a fee in lieu of an open space requirement. Majority at 758-59, 760. I agree with the majority that, if such a fee had been assessed, our cases would strictly apply the requirements of RCW 82.02.020. Our precedents have recognized that the government can-

not use its otherwise valid police power regulations as a tool to exact fees from developers and apply them to general revenues. *Trimen Dev. Co. v. King County*, 124 Wn.2d 261, 270, 877 P.2d 187 (1994). Similarly, if, as the majority suggests, the ordinance's open space requirements are in addition to those required under RCW 58.17.110, then these additional conditions "require strict compliance." *Id.* at 270. However, from the record, I cannot determine that this is what has occurred.[19]

The record before us regarding the contested open space condition is simply insufficient to determine its appropriateness under RCW 82.02.020. We know only that the City rejected a proposal with 3 percent reserved as open space under a municipal ordinance requiring a 30 percent open space set aside. We do not know the configuration of the open space within the development because a revised proposal was never submitted to the City for approval. Similarly, while we know fees might have been assessed for open space impact or for parks, these fees were never calculated. We cannot determine the amount of the fees, much less their cumulative effect under RCW 82.02.020. Nor can we assess whether they were duplicative, as Isla Verde asserted, because we have no development proposal against which to compare them. Finally, we do not have a record demonstrating a satisfactory relationship between the proposed open space condition and the development itself.

Local governments are required by statute to preserve open space. State law instructs local governments to provide for open spaces and to protect the environment. RCW 36.70A.020(9), (10). State law also directs these governments to assess whether a proposed subdivision makes "appropriate provisions" for open spaces. RCW 58.17.110. Open space requirements reflect public awareness that land is scarce, land use decisions are largely permanent, and, particularly in urban areas, land use decisions affect

---

[19] The parties are equally likely to be confounded by the majority holding since it is unlike anything presented in their briefing.

not only the individual property owner or developer, but entire communities.

Other statutes have been adopted to protect property owners and developers from decisions that are arbitrary and capricious, unsupported by substantial evidence, or that are unrelated to the impact of development as analyzed by the majority under RCW 82.02.020. These statutes offer protection against unreasonable and unsupported land use actions, but our prior decisions have addressed their applicability only when we have had sufficient facts to conduct a thorough analysis. *See, e.g., Sunderland Family Treatment Servs. v. City of Pasco*, 127 Wn.2d 782, 903 P.2d 986 (1995) (remanding where neither defendant nor appellant created a record sufficient to determine whether denial of land use permit was supported by "substantial evidence"); *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 4 P.3d 123 (2000) (remanding where necessary to find whether county's determination under the State Environmental Policy Act (chapter 43.21C RCW) was "clearly erroneous"); *Margola Assocs. v. City of Seattle*, 121 Wn.2d 625, 632, 854 P.2d 23 (1993) (remanding to decide whether revenues constituted a regulatory fee versus a tax under RCW 82.02.020).

Although I question whether RCW 82.02.020 is the best statute under which to resolve this issue, there is no question that cities may not make land use decisions in an unreasonable manner. Where the record is insufficient to support a decision, the decision may not stand. Therefore, while I agree with the majority's result, I conclude that in this, and other cases, when we are confronted with a record inadequate to resolve the issues argued, we should remand for further development of the record, rather than deciding issues not properly before us.

SANDERS, J. (concurring in part, dissenting in part) — I agree with the majority that the set aside ordinance vio-

lates RCW 82.02.020;[20] however, I disagree a municipality may constitutionally condition plat approval upon the plat developer obtaining secondary road access over adjacent private property. A condition which allows neighboring property owners to determine whether or not a plat will be approved deprives the developer of his property without due process as a matter of law. On point are *Eubank v. City of Richmond*, 226 U.S. 137, 143-44, 33 S. Ct. 76, 57 L. Ed. 156 (1912) and *Washington ex rel. Seattle Title Trust Co. v. Roberge*, 278 U.S. 116, 49 S. Ct. 50, 73 L. Ed. 210 (1928), cases neither discussed nor even cited by the majority.

To narrow the issue I assume for the purpose of this opinion the requirement for alternative road access is reasonable and necessary for fire protection purposes. Notwithstanding, the question still persists whether the responsibility to obtain this access over privately owned lands may be constitutionally imposed on the private developer rather than borne by the government itself, the more usual means to achieve such an end.

Absent meaningful analysis, the majority characterizes the question as whether the condition is "impossible" to meet. *See* Majority at 765-68. I therefore also assume for the purpose of this analysis it would be "possible" for the private developer to meet this condition in the sense that I assume most people have their price, and neighboring property owners might be induced to grant a right-of-way for some monetary consideration, however exorbitant. But even then, this condition places in private hands authority to veto or demand extortion for approval of this development. Whether this private control over the ability of a

---

[20] I disagree with Justice Johnson's concurrence that we need more facts in the record to properly analyze the case. Rather the very nub of the problem is this local ordinance requires a 30 percent set aside in cash or kind without regard to specific facts. Further factual development cannot cure an ordinance which imposes a fee contrary to state statute. We must deal with the ordinance as adopted because local authorities have no authority to retroactively apply new or different ordinances to plats already vested to the old ones, *see* RCW 58.17.033(1), nor do local authorities have the authority to require compliance with land use controls not formally enacted. *See W. Main Assocs. v. City of Bellevue*, 106 Wn.2d 47, 51, 720 P.2d 782 (1986).

property owner to secure a permit deprives the developer of his property without that process which is constitutionally due is the question.

*Eubank*, 226 U.S. 137, is instructive. There the Supreme Court struck down a city ordinance which required the establishment of a building line along any street where it was requested by the owners of two-thirds of the property. Finding the regulation deprived one owner of his property without that constitutionally required process due, the Supreme Court observed the ordinance allowed one set of owners to determine "not only the extent of use but the kind of use which another set of owners may make of their property," *id.* at 143, and added:

> The statute and ordinance, while conferring the power on some property holders to virtually control and dispose of the proper[ty] rights of others, creates no standard by which the power thus given is to be exercised; in other words, *the property holders who desire and have the authority to establish the line may do so solely for their own interest or even capriciously*.

*Id.* at 143-44 (emphasis added).

The scope of this due process right was further explained in *Roberge*, 278 U.S. 116. There a Seattle ordinance conditioned the building of a philanthropic home for children or the elderly upon the consent of the owners of two-thirds of the property within 400 feet. *Id.* at 118. Noting, "[t]here is no provision for review under the ordinance; their failure to give consent is final," *id.* at 122, the Supreme Court observed the de facto veto power vested in adjacent landowners authority to prevent the requested land use, "uncontrolled by any standard or rule prescribed by legislative action." *Id.* at 121-22. Because the other landowners "are not bound by any official duty, but are free to withhold consent for selfish reasons or arbitrarily and may subject the trustee to their will or caprice[,] [t]he delegation of power so attempted is repugnant to the due process clause of the Fourteenth Amendment." *Id.* at 122 (citation omitted) (citing *Eubank*, 226 U.S. at 143).

The condition here at issue requires a second road, whereas geography dictates that road must cross one or more parcels of privately owned property.[21] Although the property owner to the east states she will never grant such an easement,[22] the fact of the matter is that it is entirely within her unbridled discretion to change her mind to grant an easement and, if so, at what price. Unlike the government, Isla Verde has no power of private condemnation for this purpose.[23] Thus the government has placed this developer's intended use and enjoyment of its own property subject to the will of every adjacent landowner from whom government-required access must be obtained.

As in *Roberge*, this developer is made beholden to the private decision or inaction of others, there is no provision for review under the regulation, and the refusal to consent is final. *See Roberge*, 278 U.S. at 121-22. Also, as in both *Eubank* and *Roberge*, the regulation here permits an arbitrary decision to withhold consent based on malice or any number of other dark motives—all without review.

Numerous other jurisdictions have held land use permits cannot be denied based solely on the opposition of adjacent landowners. According to the Minnesota Supreme Court, although neighborhood sentiment may be taken into consideration in any zoning decision, "it may not constitute the sole basis for granting or denying a given permit." *N.W. College v. City of Arden Hills*, 281 N.W.2d 865, 869 (Minn. 1979). The same court held a conditional use permit may be denied for public safety reasons: "[n]evertheless, denial of a conditional use must be based on something more concrete than neighborhood opposition and expressions of concern

---

[21] *See* Clerk's Papers (CP) at 252; Dove Hill Subdivision File Records (SFR) at 277 (topography north of Dove Hill would not allow a street to the north and west to connect to a public right-of-way); *see also* SFR at 128 (secondary access to be constructed "from the end of NW Sierra Lane (in Dove Hill) to an acceptable access point to the east").

[22] "Now also as one of the property owners to the east, you will not receive permission for an easement during my lifetime." CP at 125 (Camas City Council Meeting (June 26, 1995)).

[23] *Brown v. McAnally*, 97 Wn.2d 360, 370, 644 P.2d 1153 (1982).

for public safety and welfare." *Chanhassen Estates Residents Ass'n v. City of Chanhassen*, 342 N.W.2d 335, 340 (Minn. 1984).

The Utah Supreme Court, while acknowledging it is not improper to solicit or rely on the advice of neighboring landowners, said *"the consent of neighboring landowners may not be made a criterion for the issuance or denial [of] a conditional use permit." Thurston v. Cache County*, 626 P.2d 440, 445 (Utah 1981) (emphasis added). The Utah Court of Appeals, citing *Thurston*, said a city council acted arbitrarily and capriciously when it denied a conditional use permit based on such "public clamor." *Davis County v. Clearfield City*, 756 P.2d 704, 712-13 (Utah Ct. App. 1988).

Similarly, the Wyoming Supreme Court has stated, "[t]he opposition of neighbors is not one of the considerations to be taken into account" when considering a development permit. *Bd. of County Comm'rs v. Teton County Youth Servs., Inc.*, 652 P.2d 400, 411 (Wyo. 1982). There the court set aside a county commission's denial of a development permit because the commission found that neighbors opposed the proposed development and the court could not determine how much weight the commission gave to such "unauthorized criteria" in making its decision. *Id.*

Collectively these cases all demonstrate what, intuitively, should be fundamentally plain: neighboring landowners should not hold an uncircumscribed veto power over a landowner's use and enjoyment of his or her own property. A condition which permits such veto violates due process.

The city's action here was also imposed against the advice of the City Attorney who presumably recognized the constitutional problem, as do I. Dove Hill Subdivision File Records at 139. Moreover, one city council member voted against the motion not to accept the preliminary plat based on the lack of a second road stating, "I support the issues that were raised here. I personally believe there needs to be a second access . *I have serious question in my mind that we have the legal right to do so* and I would like the record to

reflect that." *Id.* (emphasis added). I agree with the able council member.

I therefore dissent because the secondary access road condition does not pass constitutional muster.

ALEXANDER, C.J., concurs with SANDERS, J.

Reconsideration denied August 28, 2002.