[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 340 
¶1 The Home Builders Association of Kitsap County, Hillandale Homes, LLC, Jefferson Properties, Inc., and Andy Mueller Construction Co. (collectively Home Builders) appeal the trial court's finding that the city *Page 341 
of Bainbridge Island's (City) fees for building permits are reasonable and do not violate RCW 82.02.020. Home Builders assign error to the trial court's findings of fact and conclusions of law, urging de novo review by this court because the trial court: (1) erred by placing the burden of proof on Home Builders, (2) used the wrong standard to determine if the City's fees were reasonable, and (3) erred by concluding that the reasonableness of the costs the City included in calculating its permit fees was a political judgment beyond judicial review.
 ¶2 We hold that the burden of showing that the fees comply with a statutory exception and are reasonable rests with the City. Because we cannot resolve disputed factual assertions decided under the wrong burden of proof, we remand to the trial court to determine whether the City's fees are (1) limited to those the legislature specified and, if so, (2) reasonable in light of the statutory limitations placed on the fees the City may impose.
 FACTS ¶3 The City charges fees for issuing building permits. The fees may include a building permit fee,[1] a plan check fee,[2] a planning review fee,[3] and a drainage review fee.[4]
 ¶4 "The City accounts for and tracks its revenues and expenses in different funds." Clerk's Papers (CP) at 174. The current expense fund holds the City's revenues that are not required by law to be placed in a separate fund. The revenues in the current expense fund are primarily collected through general taxes. All fees and costs associated *Page 342 
with processing ministerial building permits are accounted for in the building subfund.
 ¶5 The City allocates overhead costs to the building subfund. The City's accounting practices, including the allocation of overhead costs to various departments, comply with standards of municipal accounting and cost allocation. Trial exhibit 18 included a cost recovery survey for other cities in western Washington, indicating that the fees the City charged "do not appear to be out of line." CP at 1181.
 ¶6 The director of finance and administrative services for the City testified that the fees the City charged do not cover all costs incurred to process the permit applications or to review the plans submitted with the applications. He further testified that in 1999 and 2000, the fees covered between 68.6 percent and 70.6 percent of the costs that were calculated based on numerous direct and indirect costs to the City of regulating building and development within the City and maintaining a planning department. The City's cost calculation includes such items as the cost of the city hall building ownership as well as certain legal fees incurred by the City. The City's collected building permit fees are insufficient to fund the City's costs to regulate all building within the City. The City deposited funds into the building subfund from the current expense fund to account for the insufficient funds in the building subfund.[5]
 ¶7 In order to fund an affordable housing program, the City needed to either increase revenues or decrease expenditures out of the current expense fund. On December 8, 1999, the city council adopted Resolution No. 99-31 that increased the building permit fee and the fee for planning review. The resolution was titled:
 A RESOLUTION OF THE CITY OF BAINBRIDGE ISLAND, WASHINGTON RELATING TO THE IMPOSITION OF A SURCHARGE ON BUILDING PERMIT FEES AND PLAN REVIEW CHARGES FOR THE PURPOSE OF PARTIALLY *Page 343 
FUNDING AN AFFORDABLE HOUSING TRUST FUND AND AMENDING SECTION 9 OF THE BAINBRIDGE ISLAND FEE SCHEDULE.[6]
CP at 185. The building permit fee was increased from 100 percent of the amount shown in the Uniform Building Code (UBC) to 110 percent of the amount in the UBC. The City also increased the fee for planning review from 10 percent of the building permit fee to 20 percent. "The Resolution did not increase the plan check fee." CP at 1180.
 ¶8 Home Builders filed a class action lawsuit against the City on behalf of all persons or entities that paid building permit fees in the City after passage of Resolution No. 99-31. Home Builders originally challenged the City's building permit fee increase, arguing that the City raised the fees for a purpose other than processing building permits, violating RCW 82.02.020.
 ¶9 Both Home Builders and the City moved for summary judgment. Home Builders argued that, as a matter of law, the fee increase violated RCW 82.02.020 because the City intended to use the funds from the building permit fee increase to support the affordable housing project, not to cover costs of processing building permit applications, and that the building permit fee increase was an illegal tax.
 ¶10 The City argued that (1) the increase in building permit fees was not an illegal tax in violation of RCW 82.02.020
and (2) the building permit application fees were "reasonable fees" permitted by RCW 82.02.020 to cover the cost of processing the building permit applications and inspecting and reviewing building plans.
 ¶11 The trial court denied Home Builders' motion and granted the City's summary judgment motion in part. It agreed that, as a matter of law, the building permit fees *Page 344 
were not an illegal tax. The trial court reserved for trial the issue of whether the building permit fees were "reasonable fees" to cover the cost of processing building permit applications. After trial, the court found for the City, issuing a memorandum decision, stating that the fees were reasonable and dismissed Home Builders' claims.
 ¶12 Home Builders appeal;[7] claiming seven assignments of error relating to the trial court's findings of fact and conclusions of law and stating the issues pertaining to the assignments of error as questions of law.
 ANALYSIS
I. THE STATUTORY LANGUAGE
 ¶13 Subject to identified statutory exceptions in RCW 82.02.050 through RCW 82.02.090, RCW 82.02.020 forbids the imposition of any fee, either direct or indirect, on construction activities. But it expressly allows an exception to this general rule to cover cities' costs to process building permit applications, inspect and review plans, or prepare State Environmental Policy Act (SEPA)[8] statements:
 Except as provided in RCW 82.02.050 through 82.02.090, no county, city, town, or other municipal corporation shall impose any tax, fee, or charge, either direct or indirect, on the construction or reconstruction of residential buildings, commercial buildings, industrial buildings, or on any other building or building space or appurtenance thereto, or on the development, subdivision, classification, or reclassification of land. However, this section does not preclude dedications of land or easements within the proposed development or plat which the county, city, town, or other municipal corporation can demonstrate are reasonably necessary as a direct result of the proposed development or plat to which the dedication of land or easement is to apply.
 . . . . *Page 345 
 Nothing in this section prohibits cities, towns, counties, or other municipal corporations from collecting reasonable fees from an applicant for a permit or other governmental approval to cover the cost to the city, town, county, or other municipal corporation of processing applications, inspecting and reviewing plans, or preparing detailed statements required by chapter 43.21C RCW.
RCW 82.02.020 (emphasis added).
II. STANDARD OF REVIEW
 ¶14 Home Builders first argue that the trial court erred in placing the burden of proof on them to disprove the reasonableness of the City's fee calculation for processing applications, inspecting and reviewing plans, or preparing detailed statements required by chapter 43.21C RCW. They also challenge the standard used to determine whether the fees were reasonable and the scope of judicial review of costs used to set the fees.
 ¶15 We review legal questions de novo.[9] Sunny-sideValley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 880,73 P.3d 369 (2003). The City asserts on appeal that Home Builders cannot raise these issues because they did not properly preserve them at trial. But Home Builders appeal the trial court's final judgment and its conclusions of law, and the City answered these same claims and fully briefed them on appeal. See RAP 2.2(a)(1). "The appellate court may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a) (emphasis added). Our refusal to review is not compulsory. See RAP 2.5(a). The rule that appellate courts will not review errors not raised in trial court reflects the policy of encouraging the efficient use of judicial resources. State v. Scott, 110 Wn.2d 682, 685,757 P.2d 492 (1988). Here, declining to address the legal *Page 346 
issues would not serve to encourage the efficient use of judicial resources and we, therefore, address Home Builders' legal issues.
 ¶16 The legal issues Home Builders raises are essential to every trial court's consideration of a permit fee challenge under RCW 82.02.020. They are a matter of significant interest to the public and to governmental entities that regulate building and development; and, therefore, it is in the best interest of judicial resources if we address them here.Scott, 110 Wn.2d at 685. It is of particular importance because we can find no authority interpreting whether the legislature intended to identify the bases of the questioned fees as an exception to the general prohibition of fees on construction and the corresponding allocation of the burden of proof under RCW 82.02.020.
 ¶17 Home Builders' challenge requires that we interpret RCW 82.02.020. When interpreting a statute, we first look at its plain meaning from the statutory language itself. Cerrillov. Esparza, 158 Wn.2d 194, 201, 142 P.3d 155 (2006). Only if the statute is ambiguous do we resort to aids of statutory constructions, including legislative history. City ofOlympia v. Drebick, 156 Wn.2d 289, 295, 126 P.3d 802 (2006).
III. EXCEPTION TO PROHIBITION ON FEES AND BURDEN OF PROOF
 ¶18 Home Builders argue that the trial court erred in placing the burden of proof on them to disprove the reasonableness of the City's fees. Relying on Isla VerdeInternational Holdings, Inc. v. City of Camas,146 Wn.2d 740, 49 P.3d 867 (2002), they assert that a party claiming an exception to a rule, here, the City, bears the burden of demonstrating that the claimed exception applies. The City disagrees, arguing that the trial court did not err in placing the burden of proof on Home Builders. The City asserts that the burden of proof falls on the party challenging a fee's reasonableness. *Page 347 
 ¶19 On appeal, Home Builders have not challenged the constitutionality of the fees or the inherent power of the City to impose these fees but argue that the costs included in calculating the fees do not fall within the legislative exception. Thus, the general rule that a party challenging the reasonableness of a fee bears the burden of persuasion does not apply and the cases the City relies on are inapposite.[10]
The City is correct that the burden of proof rests with any challenger who asserts that a fee or tax is invalid or unconstitutional because it is unreasonable. See ThurstonCounty Rental Owners Ass'n v. Thurston County,85 Wn. App. 171, 931 P.2d 208, review denied, 132 Wn.2d 1010 (1997) (the party who challenges the reasonableness of the fees bears the burden of proof). But Home Builders challenge whether the City's fees fall within the allowed statutory exceptions to RCW 82.02.020.
 ¶20 In Isla Verde, our Supreme Court held that, for purposes of RCW 82.02.020, the burden of establishing a statutory exception is on the party claiming the exception.Isla Verde, 146 Wn.2d at 759. RCW 82.02.020 prohibits a city from collecting fees except for (1) involuntary impact fees permitted under RCW 82.02.050 through RCW 82.02.090, (2) dedications of land, (3) easements, and (4) "voluntary agreements that allow a payment in lieu of dedication of land or to a mitigate direct impact . . . of a proposed development."Isla Verde, 146 Wn.2d at 753-54. But RCW 82.02.020 also allows and itemizes exceptions for reasonable fees based on costs of processing applications, inspecting and reviewing plans, and preparing SEPA statements. *Page 348 
 ¶21 In Isla Verde, a developer challenged the legality of a 30 percent "open space"[11] set aside, and the court analyzed whether the set aside fell under the exception for dedications of land in RCW 82.02.020. Isla Verde,146 Wn.2d at 755-60. Our Supreme Court held that "RCW 82.02.020
requires strict compliance with its terms"; thus, "[a] tax, fee, or charge, either direct or indirect, imposed on development is invalid unless it falls within one of the exceptions specified in the statute." Isla Verde, 146 Wn.2d at 755.
 ¶22 RCW 82.02.020's provision allowing cities to collect reasonable fees for processing applications, inspecting and reviewing plans, or preparing detailed statements required by SEPA is an express exception to its general prohibition of fees on development projects. Here, the trial court did not analyze whether (1) the City's building permit fees were fully within the allowable exceptions to RCW 82.02.020 or (2) the actual fees imposed were limited to RCW 82.02.020's identified exceptions. The only issue at trial was whether the City's costs and the resulting fees were reasonable. This prevented Home Builders' challenge to whether the imposed fees were an allowable exception because the City was not required to show that the fee calculation was limited to the legislatively specified costs of processing applications, inspecting and reviewing plans, or preparing SEPA statements. The City argued and the trial court agreed that the entire cost of the City's regulation of building within its city limits was the proper basis of the fees charged.
 ¶23 Because these fees are, by statute, an exception to the general prohibition against fees on construction and development, the City must show that its fees fall within the specific exception and that they are reasonable. Thus, the trial court erred and we vacate and remand the case for further proceedings allocating the burden of proof to the City. *Page 349 
IV. COSTS USED TO CALCULATE PERMIT FEES UNDER RCW 82.02.020
 ¶24 Because the issue of which costs are used in determining whether the City's fees comply with the exceptions in RCW 82.02.020 will arise on remand, we examine the statute's exceptions. RCW 82.02.020 is not ambiguous. The legislature clearly prohibited cities from imposing fees on construction or development unless those fees were specifically allowed by statute. The legislature itemized the costs to be used as a basis for reasonable fees charged to permit applicants. Those fees are based on costs of "processing applications, inspecting and reviewing plans, or preparing detailed statements required by chapter RCW 43.21C RCW [SEPA]." RCW 82.02.020.
 ¶25 The City would have us read these costs broadly, to include all costs the City attributes to its building and planning department. In support of its position, it produced a cost recovery survey for other cities in western Washington. The survey persuaded the trial court that the fees the City charged were comparable. But there is no evidence in the record before us that the basis of the survey was RCW 82.02.020's limitation on fees to the costs of processing applications, inspecting and reviewing plans, or preparing detailed statements required by SEPA as the basis of the fees charged by various cities.
 ¶26 The trial court also heard testimony from the City's director of finance and administrative services that the fees collected by the City under RCW 82.02.020 do not cover the costs the City incurs to process the permit applications or to review the plans submitted with the applications. A financial and management consultant for local governments confirmed that the City complied with guidelines for cost accounting and cost allocation for government agencies. But neither the director nor the consultant testified that the City addressed the specific costs listed in RCW 82.02-.020 in calculating the fees it charges permit applicants. *Page 350 
 ¶27 We reject the City's and the trial court's expansion of RCW 82.02.020's exception beyond the costs of processing applications, inspecting and reviewing plans, or preparing SEPA statements to include a portion of all costs allowed by accounting and cost allocation guidelines for government agencies. If the legislature meant to allow such a broad exception for the basis of fees charged permit applicants, it was capable of so stating. We are constrained to interpret the statute according to its clear meaning and we leave any expansion of this narrow exception to those charged with the duty to create laws. Dep't of Ecology v. Campbell Gwinn, LLC, 146 Wn.2d 1, 11-12, 43 P.3d 4 (2002); Deanv. McFarland, 81 Wn.2d 215, 222, 500 P.2d 1244 (1972).
 ¶28 Thus, the trial court erred when it reached its decision on the reasonableness of the City's permit fees based on general accounting and cost allocation principles and the City's costs of regulation, instead of focusing on evidence of costs the legislature specifically allowed in RCW 82.02.020.
V. REASONABLENESS STANDARD
 ¶29 Home Builders also argue that the trial court relied on the wrong standard to determine if the City's fees were reasonable. Because this issue may also arise on retrial, we address it. The trial court concluded that the City's fees were not "grossly disproportionate" to the City's cost of regulation. CP at 1182. RCW 82.02.020 does not mention the phrase "grossly disproportionate." Home Builders assert that the "grossly disproportionate" standard is used only if there is no statutory language regarding the excessiveness of the fees. Br. of Appellant at 27. It argues that statutory language of RCW 82.02.020 specifically limits the fees permitted by RCW 82.02.020 and allows a city to collect fees only for processing building permit applications, inspecting and reviewing building plans, and preparing detailed statements. The City argues that the trial court properly focused on the reasonableness of the fees and that any error did not result in prejudice and cannot be grounds for reversal. *Page 351 
 ¶30 The legislature established that the proper measure of fees imposed as an exception to the general prohibition of fees on construction is that they be "reasonable." RCW 82.02.020. Reasonable is defined as "being or remaining within the bounds of reason: not extreme: not excessive." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1892 (2002). Therefore, the trial court erred in imposing the burden on Home Builders to prove that the City's fees are "grossly disproportionate." Br. of Appellant at 27.
 ¶31 We have held that the burden is on the City to show that the fees it imposes are fully within the statutory exceptions and are reasonable and remand the matter for retrial. During that process, evidence of the specific costs included in the fees will be before the court. If the trial court is persuaded that the City is in compliance with the legislature's limitations on these costs and fees, the City may present evidence relating to the reasonableness of the calculations and the resulting fees.
VI. SCOPE OF JUDICIAL REVIEW
 ¶32 Home Builders also argue that the trial court erred by concluding that the reasonableness of the City's costs was a political judgment and beyond the scope of judicial review. They argue that the trial court's ruling renders the reasonableness of RCW 82.02.020 judicially unreviewable. The City counters that the trial court did review the reasonableness of the City's fees and that it concluded that the City's choice of where to house its offices was a political judgment beyond the scope of judicial review. We agree with the City.
 ¶33 The trial court's finding that the City's choice of office space and its legal costs are political judgments by elected City officials is correct, but it is not determinative of whether those costs are properly included in the cost calculation for the specific statutory exceptions to a prohibition on fees imposed on development. We reject Home Builders' suggestion that the trial court concluded that "the reasonableness or excessiveness of the costs [the City] *Page 352 
incurs and passes on to fee applicants is an unreviewable `political judgment.'" Br. of Appellant at 34. Clearly, the trial court concluded that reasonableness of the fees was judicially reviewable because it denied summary judgment on the issue and held a four-day trial on the issue of reasonableness. Thus, we hold that the trial court did not err in this conclusion.
 ¶34 We reverse and remand for further proceedings consistence with this opinion.
HOUGHTON, C.J., and QUINN-BRINTNALL, J., concur.
[1] The building permit fee is collected to cover a portion of the City's costs in processing building permit applications.
[2] The plan check fee covers a portion of the costs associated with reviewing the application plans and specifications for compliance with the technical requirements of the Uniform Building Code.
[3] The planning review fee covers a portion of the costs associated with the Current Planning Division's review of planning issues.
[4] The drainage review fee covers a portion of the work done on reviewing the adequacy of the proposed storm water drainage provisions.
[5] "In 1999, the City transferred $1,100,000 from the Current Expense Fund to the Building and Development Services Fund" to account for the deficit "and in 2000, the City transferred $1,455,000." CP at 177.
[6] Although the resolution stated that the building permit fee was being increased to fund an affordable housing trust fund, it did not fund the affordable housing program directly. Instead, the increased fees provided for more revenue for the building subfund, thereby decreasing the building subfund's deficit. With a smaller deficit, the City had to transfer less revenue from the current expense fund into the building subfund. Therefore, more funds were available in the current expense fund for the affordable housing project.
[7] Home Builders first filed for direct review by the Washington Supreme Court under RAP 4.2(a)(3). The Supreme Court denied review and transferred the appeal to us.
[8] Ch. 43.21C RCW.
[9] Home Builders also challenge findings of fact 9, 10, 14, 16, 17, and 18. Findings of fact are reviewed by this court for substantial evidence. Wenatchee Sportsmen Ass'n v.Chelan County, 141 Wn.2d 169, 176, 4 P.3d 123 (2000). But because we hold that the trial court erred in not first requiring the City to demonstrate its compliance with the specific statutory exceptions to the prohibition on development fees, we do not reach the factual contentions based on the erroneous placement of the initial burden of proof.
[10] Brown v. City of Yakima, 116 Wn.2d 556,807 P.2d 353 (1991); Louthan v. King County, 94 Wn.2d 422,617 P.2d 977 (1980); Teter v. Clark County, 104 Wn.2d 227,704 P.2d 1171 (1985); Hillis Homes, Inc. v. Pub. Util. Dist.No. 1 of Snohomish County, 105 Wn.2d 288, 714 P.2d 1163
(1986); Prisk v. City of Poulsbo, 46 Wn. App. 793,732 P.2d 1013 (1987); Lincoln Shiloh Assocs. v. Mukilteo WaterDist, 45 Wn. App. 123, 724 P.2d 1083 (1986).
[11] "`"[O]pen space(s)" [is] defined [as an area] set aside and suitable for active or passive recreation.'" IslaVerde, 146 Wn.2d at 746 n. 2 (quoting former CAMAS MUNICIPAL CODE 18.62.020).