This opinion was filed for record

at _8:00 am_ on _Oct. 11, 2018_

SUSAN L. CARLSON
SUPREME COURT CLERK

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE OCT 11 2018
Fairhurst, C.J.
CHIEF JUSTICE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| COMMUNITY TREASURES d/b/a/ CONSIGNMENT TREASURES, a Washington not for profit corporation; JOHN EVANS and BONITA BLAISDELL, on behalf of themselves and all others similarly situated,<br><br>Petitioners,<br><br>v.<br><br>SAN JUAN COUNTY, a political subdivision of the State of Washington,<br><br>Respondent. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 94463-6<br><br>En Banc<br><br><br><br><br><br><br><br>Filed ___OCT 11 2018___ |

JOHNSON, J.—We are asked to decide whether the Land Use Petition Act (LUPA), chapter 36.70C RCW, applies when parties are challenging, as excessive, permit application fees assessed when a building or a land use permit application is submitted for processing. The trial court dismissed the suit on a motion for judgment on the pleadings, concluding that LUPA governed and the failure to file

suit within 21 days barred the action. The Court of Appeals affirmed. We hold that the imposition of a permit application fee falls under the statutory definition of a land use decision under chapter 36.70C RCW and affirm.

FACTS AND PROCEDURAL BACKGROUND

In 2012 and 2013, petitioners submitted permit applications[1] to the San Juan County Department of Community Development. The county code lists 19 items that a party must submit to complete an application, one of which is paying "[t]he applicable fee." SAN JUAN COUNTY CODE (SJCC) 18.80.020(C)(4). Petitioners paid the applicable fees, and the permits were issued.

On March 18, 2015, almost three years later, petitioners filed this lawsuit, seeking a partial refund of the fees they now characterize as "illegally excessive" in violation of RCW 82.02.020. Pet. for Review at 1; *see* Clerk's Papers (CP) at 2. They sought certification as a class action lawsuit for everyone who paid San Juan County for consideration of land use and building permits, modifications, or renewals during the preceding three years. Petitioners requested a declaratory judgment, payment to the putative class reaching back three years for any amount found to be an overcharge, and attorney fees.

---

[1] As relevant here, petitioner John Evans submitted an application to build a storage building on his property on Orcas Island, for which the county charged a $105 review fee. Petitioner Community Treasures submitted two applications to change the use of existing buildings to retail, and one application for a building permit to construct additions to an existing building. The county charged $109.50 and $753.60 in fees to review and process those applications.

San Juan County filed a motion for judgment on the pleadings and asserted that chapter 36.70C RCW, commonly referred to as LUPA, was the exclusive means of judicial review for the fees paid because each fee was inextricably tied to and paid as a condition of approval of a land use decision. Applying our decision in *James v. Kitsap County*, 154 Wn.2d 574, 115 P.3d 286 (2005), the trial court agreed and held that LUPA applied to the claims asserted and that the plaintiffs did not exhaust administrative remedies or file complaints within 21 days of the issuance of the permits, and the court dismissed the complaint.

The Court of Appeals affirmed the dismissal, reasoning that "[b]ecause the [applicable] fee is a mandatory requirement for a completed project permit application, LUPA applies to a challenge to the building permit application fees." *Cmty. Treasures v. San Juan County*, No. 74738-0-I, slip op. at 5 (Wash. Ct. App. Apr. 3, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/747380.pdf. It rejected petitioners' further argument that even if challenges to the amount of a permit application fee were subject to LUPA, the statutory exception for "[c]laims provided by any law for monetary damages or compensation" applied. RCW 36.70C.030(1)(c). It noted that RCW 82.02.020 expressly states that counties are not prohibited from imposing reasonable fees for building permit applications and noted that the petitioners' challenge was not to the ordinance establishing the

3

application fees but to the payment of the fees imposed for a completed project permit application.

ANALYSIS

Petitioners contend the trial court erred in determining that LUPA applied to their claim for partial reimbursement of alleged overcharges for permit application processing fees. This case raises questions of statutory interpretation, which we review de novo. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 926, 296 P.3d 860 (2013).

LUPA is the exclusive means for obtaining judicial review of a county's land use decisions; building permits are subject to review under LUPA. RCW 36.70C.030(1); *James*, 154 Wn.2d at 583-84. The legislature enacted LUPA in 1995, "to reform the process for judicial review of land use decisions made by local jurisdictions, by establishing uniform, expedited appeal procedures and uniform criteria for reviewing such decisions, in order to provide consistent, predictable, and timely judicial review." RCW 36.70C.010. It explicitly replaced the writ of certiorari for purposes of appealing land use decisions and is the "*exclusive* means of judicial review of land use decisions," with only a handful of specific exceptions. RCW 36.70C.030(1) (emphasis added).

A petition for review of a land use decision must be filed within 21 days of the issuance of the decision. RCW 36.70C.040(3). To have standing to bring a land

use petition, a party must have exhausted administrative remedies "to the extent required by law." RCW 36.70C.060(2)(d). There are only statutory exceptions to this provision; as we have previously explained, no equitable exceptions to the exhaustion requirement in LUPA exist. *Durland v. San Juan County*, 182 Wn.2d 55, 66-67, 340 P.3d 191 (2014).

Petitioners did not contest the fee amounts at the time of payment, nor do they contest the fact that they did not pursue administrative remedies and did not file land use petitions within 21 days of the assessment of the fees in question. Thus, their complaint was properly dismissed if the assessment of fees constituted "land use decisions" under LUPA.

Petitioners characterize the decision to impose the application fee as "a prerequisite that must be fulfilled before an applicant can get a land use decision," arguing that "[a] decision to impose that fee is not, itself, a 'land use decision' [because] nothing about the fee and the process for determining it affects the use of land." Suppl. Br. of Pet'r at 3.

The county, on the other hand, points out that "[t]he land use decision 'on an application' includes a constellation of smaller decisions that precedes approval or disapproval of the land use request," and that "[t]hese decisions are part-and-parcel of the permit decision and inextricably linked to the permit itself." Suppl. Br. of Resp't at 8. We agree with the county.

As a starting point, RCW 36.70C.020(2) provides the definition of a "land use decision":

> "Land use decision" means a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals, on:
> (a) *An application* for a project permit or other governmental approval required by law before real property may be improved, developed, modified, sold, transferred, or used.

(Emphasis added.)

SJCC 18.80.020, which governs project permit applications in San Juan County, states that a completed application *must* include the applicable permit fee. The imposition of such a processing fee is ministerial in nature. In *Chelan County v. Nykreim*, 146 Wn.2d 904, 940, 52 P.3d 1 (2002), we explicitly stated that LUPA does not distinguish between quasi-judicial and ministerial decisions and governs both. And because the fee here is a mandatory requirement for a completed project permit application, it is inextricably tied to the permitting process. Mindful of the policy of finality in land use decisions, this court in *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 4 P.3d 123 (2000), likewise held that an untimely petition under LUPA precluded collateral attack of the land use decision and rendered the improper approval valid. Similar considerations apply here.

To conclude otherwise, one would have to disregard the basic tenets of statutory construction and interpret clear and unambiguous language to achieve a

result contrary to the purpose LUPA was enacted to achieve. Community Treasures' argument is similar to the argument the respondents advanced in *James*: both seem to concede that building permits must be challenged through a LUPA action within 21 days, but insist that challenges to permit *conditions* can be brought separately up to 3 years later. The fees imposed, whether petitioners agree or not, are part and parcel of any application. There is nothing tangential about requiring a person or an entity seeking to build or enhance a structure to pay a required application fee—a nonpayment of the fee is directly related to the final determination of whether to grant or deny the permit. That these fees were due and payable before the county's consideration or processing of the land use applications in question is of no legal consequence: there are many other prerequisites that must be met before the final decision is issued, but those activities or conditions are all tied to the decision process nonetheless, occurring within the processing of the application. Accepting Community Treasures' argument to the contrary would undermine the purpose LUPA established. Adopting petitioners' argument would divide a land use decision into component pieces, each of which would arguably support a claim for monetary damages arising out of the decision process. Our cases have rejected that argument. *See James*, 154 Wn.2d at 582-83.

7

And while it seems fairly obvious that the decision whether to charge fees and the decision to impose a fee structure in the first place were made independently at some point, that does not appear to form the basis of the petitioners' claim here.

Petitioners argue further that even if LUPA governs, their claims fit the "monetary damages or compensation" exception under RCW 36.70C.030(1)(c).[2] We disagree.

Petitioners rely on *Home Builders Ass'n of Kitsap County v. City of Bainbridge Island*[3] to argue that the fees imposed and collected by the county in 2012, 2013, and 2014 exceeded expenses in violation of RCW 82.02.020 as an unauthorized tax. That statute forbids a city, county, or municipal corporation from imposing any fee on construction activities but expressly allows an exception to this general rule to cover a municipality's costs to process building permit applications and to inspect and review plans.

---

[2] It provides, in relevant part:
"(1) This chapter replaces the writ of certiorari for appeal of land use decisions and shall be the exclusive means of judicial review of land use decisions, except that this chapter does not apply to:
". . . .
"(c) Claims provided by any law for monetary damages or compensation. If one or more claims for damages or compensation are set forth in the same complaint with a land use petition brought under this chapter, the claims are not subject to the procedures and standards, including deadlines, provided in this chapter for review of the petition. The judge who hears the land use petition may, if appropriate, preside at a trial for damages or compensation."

[3] 137 Wn. App. 338, 153 P.3d 231 (2007).

Petitioners' class action complaint alleged that similar to *Home Builders*, "the municipality had overcharged for fees associated with building permits." CP at 35. But as the Court of Appeals correctly held, *Home Builders* does not support petitioners' argument because here, unlike in *Home Builders*, the class action does not challenge the ordinance[4] establishing permit fees but, rather, the payment of the fees imposed as part of a completed project permit application. *See* CP at 46 (alleging systematic overcharging), 47 (seeking a declaration that "the fees charged plaintiffs were in excess of those allowed by RCW 82.02.020 are therefore invalid"). Furthermore, in *James*, we have already rejected the applicability of RCW 82.02.020 to the "monetary damages" exception in LUPA in the wake of its enactment.

Finally, we note that concluding that LUPA applies does not leave a permit applicant without legal recourse or render the fee amount unchallengeable. If an applicant views the permit application fee as unreasonable, the LUPA review procedures establish the basis to seek relief and bring a challenge, provided the time limits are met. Here, petitioners failed to exhaust all available administrative remedies and file an appeal in superior court within 21 days of the final decision to

---

[4] The challenge in *Home Builders* was to Resolution 99-31, authorizing various fee increases.

grant their completed applications, including the requisite fees. We affirm the

Court of Appeals.

WE CONCUR:

No. 94463-6

MADSEN, J. (dissenting)—This case concerns whether the Land Use Petition Act

(LUPA), chapter 36.70C RCW, applies to petitioners' suit seeking reimbursement for

alleged overcharges concerning application fees charged by San Juan County (County)

for processing petitioners' building and land use permit applications.  In my view, LUPA

does not apply to the present suit challenging application processing fees.  First, the

ordinance setting permit fees specifically states that the permit fees are "for services

provided" and, thus, are not imposed as mitigation for the land use impact of a project.[1]

When imposed, these permit fees are limited by state law[2] to only the amount necessary

for the County to recoup its costs of processing the permit; the fees are not, nor can they

be, tied to the impact of the proposed project.

Second, it makes no sense for permit applicants, like the present petitioners who

have received their building and land use permits, to jeopardize the timely pursuit of their

projects by filing a LUPA appeal for the sake of attempting to recoup a few dollars in

---

[1]*See* Clerk's Papers at 83-90 (San Juan County Ordinance 28-2011) (formatting omitted).
[2]See footnote 5, *infra*, addressing RCW 82.02.020.

application processing overcharges. In other words, the applicants here received their permits and it makes no sense for them to file a LUPA appeal to challenge permit fees that are set by separate ordinance.

Third, I disagree with the majority's overly expansive reading of our opinion in *James v. Kitsap County*, 154 Wn.2d 574, 115 P.3d 286 (2005). The result of the majority's misapplication of *James* will require that any county action that precedes the County's ultimate land use decision and that can conceivably be associated with such final land use decision is subject to review only via a LUPA petition, no matter how tangential the prior county action may be to the final land use decision. In my view, the circumstances of this case show the fallacy of such an approach.

Finally, in the present circumstance—where petitioners are seeking only money compensation rather than reversal or modification of a land use decision—LUPA itself expressly exempts such claims from its provisions. Accordingly, I dissent.

## FACTS

The relevant facts on appeal are not in dispute. In 2012 and 2013, petitioners submitted four separate permit applications and paid the applicable fees, without objection, to the San Juan County Department of Community Development.[3] The county

---

[3] Petitioners in this court include John Evans and Community Treasures, a nonprofit corporation. In the trial court, six permits were at issue. As explained herein, the trial court determined that LUPA applied to each of the plaintiffs' claims for partial refund and granted summary judgment to the County on that basis. Additionally, as to two of the six permits at issue, the trial court ruled that plaintiffs had no standing to seek partial refund of the processing fee because another person or entity had paid the fee. The trial court's standing determinations regarding the permit challenged by Bonita Blaisdell and one of Community Treasures' permits were not appealed.

2

code lists multiple items that a party must submit to complete an application for a project permit and, relevant here, specifies that the permit application "must" include "[t]he applicable fee." SAN JUAN COUNTY CODE (SJCC) 18.80.020(C)(1), (4).

On April 12, 2012, petitioner John Evans submitted an application to build a storage building on his property on Orcas Island. The review fee was $105, plus a state surcharge of $4.50 for a total of $109.50. Evans paid without objection, and the County approved his application on April 25, 2012.

On September 19, 2013, Community Treasures submitted three permit applications.[4] Two applications sought to change the use of existing buildings to retail. Community Treasures paid a fee of $109.50 for each of the change of use applications, and the County approved the change of use on November 22, 2013.

Community Treasures also submitted one application for a building permit to construct additions to an existing building and paid $753.60 as part of the application. On February 26, 2014, the County issued the permit. Neither Mr. Evans nor Community Treasures sought to appeal any part of these approvals to a hearing examiner.

On March 18, 2015, Community Treasures and Mr. Evans filed the present lawsuit, seeking a partial refund of the fees paid for their permits and seeking

---

Thus, only four permits (three concerning Community Treasures and one concerning John Evans) are currently at issue in the present matter.

[4] The F. & P. Penwell Trust owns a six acre parcel on San Juan Island. Frank and Patricia Penwell are the trustees. Mr. Penwell is also on the board of Community Treasures, a nonprofit corporation. The trust leases the six acre parcel to Community Treasures. Here, Mr. Penwell submitted the noted permit applications on behalf of the trust. For purposes of simplification, I refer to the requesting entity as Community Treasures.

No. 94463-6
Madsen, J., dissenting

certification as a class action lawsuit for everyone who paid the County for the

consideration of land use and building permits or modifications or renewals during the

preceding three years. The first amended complaint alleged the "fees paid . . . were in

excess of those allowed by RCW 82.02.020."[5] Clerk's Papers (CP) at 2. Plaintiffs

requested a declaratory judgment, payment to the putative class reaching back three years

for any amount found to be an overcharge, and attorney fees.

Defendant County filed a motion for judgment on the pleadings. The County

asserted LUPA was the exclusive means of judicial review for the fee paid because each

fee was inextricably tied to and paid as a condition of approval of a land use decision.

The trial court agreed, ruling that LUPA applied to the plaintiffs' claims for refund

of application fees. In letter rulings, the trial court concluded that plaintiffs did not

---

[5] RCW 82.02.020 provides a "general prohibition of fees on development projects," but it provides an exception allowing a county "to collect reasonable fees for processing applications, inspecting and reviewing plans, or preparing detailed statements required by SEPA [(State Environmental Policy Act, chapter 43.21C RCW)]." *Home Builders Ass'n of Kitsap County v. City of Bainbridge Island*, 137 Wn. App. 338, 348, 153 P.3d 231 (2007). The statute states, in relevant part,

> [N]o county, city, town, or other municipal corporation shall impose any tax, fee, or charge, either direct or indirect, on the construction or reconstruction of residential buildings, commercial buildings, industrial buildings, or on any other building or building space or appurtenance thereto, or on the development, subdivision, classification, or reclassification of land.

RCW 82.02.020. The statute further provides an exception, stating,

> Nothing in this section prohibits cities, towns, counties, or other municipal corporations from collecting reasonable fees from an applicant for a permit or other governmental approval to cover the cost to the city, town, county, or other municipal corporation of processing applications, inspecting and reviewing plans, or preparing detailed statements required by chapter 43.21C RCW [SEPA].

RCW 82.02.020(3); *see also Home Builders Ass'n*, 137 Wn. App. at 349. Here, the trial court dismissed the suit on the threshold issue of LUPA applicability and never reached petitioner's substantive assertions.

4

exhaust administrative remedies or file complaints within 21 days of the land use decision. The trial court dismissed the complaint, and plaintiffs appealed.

In an unpublished opinion, the Court of Appeals affirmed dismissal, ruling that the building permit fee is a component of a final land use decision, subject to review under LUPA. The Court of Appeals stated,

> RCW 36.70C.020(2)(a) unambiguously defines a "land use decision" as a final determination on an "application for a project permit." SJCC 18.80.020 governs project permit applications. The plain and unambiguous language of SJCC 18.80.020(C)(1) and (4) states a completed application shall include the applicable permit fee. . . . Because the fee is a mandatory requirement for a completed project permit application, LUPA applies to a challenge to the building permit application fees.

*Cmty. Treasures v. San Juan County*, No. 74738-0-I, slip op. at 4-5 (Wash. Ct. App. Apr. 3, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/747380.pdf. Community Treasures and Mr. Evans petitioned this court for review, which was granted on September 6, 2017.

### ANALYSIS

<u>Standard of Review</u>

Whether the trial court erred in determining that LUPA applied to petitioners' claim for partial reimbursement of alleged overcharges for permit application processing fees raises questions of statutory interpretation. Our review is de novo. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 926, 296 P.3d 860 (2013); *Tingey v. Haisch*, 159 Wn.2d 652, 657, 152 P.3d 1020 (2007).

5

A Permit Application Processing Fee Is Not a Land Use Decision

I acknowledge that LUPA is the exclusive means for obtaining judicial review of a county's "land use decisions." RCW 36.70C.030(1); *Habitat Watch v. Skagit County*, 155 Wn.2d 397, 407, 120 P.3d 56 (2005). And building permits, as substantive land use decisions, are subject to the procedural requirements of LUPA. *James*, 154 Wn.2d at 584.[6] But this case is not about a final substantive land use decision. Petitioners' suit does not seek to challenge or modify any final determination concerning the use of land. Petitioners' suit concerns only a money damages claim for alleged overcharges of application processing fees, in amounts pursuant to a schedule that was determined outside of petitioners' land use permit decisions. For purposes of LUPA, a "land use decision" includes a local jurisdiction's "final determination . . . on . . . [a]n application for a project permit" required before real property may be improved, developed, modified, or used. RCW 36.70C.020(2)(a). Here, the processing fees at issue were determined by a county ordinance that amended the relevant fee schedule before any of the permits in question were filed. The corresponding amounts from the fee schedule were then applied when petitioners later filed their building and land use applications. Thus, the determination of the fee schedule amounts that were applied here, the propriety of which is the basis of petitioners' class action suit, occurred outside the County's consideration of petitioners' project permit applications. In my view, simply plugging in

---

[6] Under LUPA, a petition for review of a land use decision must be filed within 21 days of the issuance of the decision. RCW 36.70C.040(3). To have standing to bring a land use petition, a person must have exhausted administrative remedies to the extent required by law. RCW 36.70C.060(2)(d).

No. 94463-6
Madsen, J., dissenting

the predetermined processing fees from the fee schedule to petitioners' permit applications is not a land use decision subject to LUPA.[7]

The courts below and the majority reasoned that since the processing fee is a mandatory requirement of a permit application, LUPA applies to challenges to the amount of the fees. But such broad "but for" reasoning is at odds with this court's holding in *Isla Verde International Holdings, Inc. v. City of Camas*, 146 Wn.2d 740, 761, 49 P.3d 867 (2002), that "development conditions must be tied to a specific, identified impact of a development on a community." *See also James*, 154 Wn.2d at 586 (same).

Relying on *Isla Verde*, this court, in *James*, explained the nature of the link that the impact fee had to the issuance of the building permit stating,

> [I]dentification of the specific impact of a development on a community, assessment of the public facilities necessary to serve that development, and determination of the amount of impact fees needed to aid in financing construction of the facilities at the time a county issues a building permit inextricably links the impact fees imposed to the issuance of the building permit.

*Id.* Under this analysis, the *James* court held that "building permits are ministerial decisions subject to judicial review under LUPA, and we find that the imposition of

---

[7] I find unpersuasive the majority's attempt to distinguish this case from *Home Builders*, in which petitioners filed a similar class action suit challenging permit fees as overcharges violating RCW 82.02.020. The majority notes that petitioners here are challenging the payment of fees imposed, rather than challenging the ordinance that increased the fees. But in both cases, the gravamen of the complaint is that the fees did not reflect costs and thus were overcharges in violation of RCW 82.02.020. In *Home Builders*, Division Two of the Court of Appeals reversed the trial court's grant of summary judgment for the city and held that the burden to show that the permit fees complied with the statutory exceptions contained in RCW 82.02.020 lay with the city, remanding the case for further proceedings.

7

impact fees as a condition on the issuance of a building permit is as well." *Id.* (citing *Chelan County v. Nykreim*, 146 Wn.2d 904, 52 P.3d 1 (2002)).

As noted, the majority's view is that because the San Juan County Code requires payment of the application processing fee (*see* SJCC 18.80.020(C)(1), (4)) when submitting the permit application, the fee is a condition for issuing a building permit and cites *James* as support. But this court actually held in *James* that "the imposition of impact fees *as a condition on the issuance of a building permit* is a land use decision and is not reviewable unless a party timely challenges that decision within 21 days of its issuance." *James*, 154 Wn.2d at 586 (emphasis added).

The application fee in the present case does not involve a determinative connection to the land use decision. It is merely a processing fee that must be paid regardless of the application's outcome. Instead, the application fee at issue here is similar to the processing fees submitted with a college application or a court filing fee, neither of which is affected by the determination and outcome on the application. The application fee here is a prerequisite to consideration of the land use request; it must be paid even if the permit is abandoned or denied; it is merely a processing fee, administrative in nature and not part of the actual land use decision.

These distinctions reflect the differing purposes of the impact fees in *James* and the application fees here. Impact fees facilitate the efficient mitigation of the effects of development; in contrast, application processing fees fund government's regulatory oversight as their only purpose. Notably, the ordinance enacting the fee schedule

indicates that its purpose is "setting fees *for services provided.*" CP at 83 (emphasis added) (formatting omitted). Thus, the application fees are reflective of the costs of processing and are unrelated to any consequence or effect that the completed project may impose on the environment or community. In *James*, this court addressed a challenge to the imposition of an impact fee, the amount of which was determined by the needs resulting from the project as proposed. We concluded that the impact fee was inextricably linked to the substantive decision regarding the use of land and issuance of the building permit, and thus was subject to LUPA. By contrast, the application fee here concerns administrative processing and has no similar connection to the land use determination. Because the application fee lacks a similar mitigating connection to the substantive land use decision, LUPA does not apply.

In the majority's view, LUPA applies to *all* administrative decisions leading to land use approval. I disagree. Notably, the provisions of chapter 36.70C RCW have been found to *not* apply to "an interim decision made in the process of, but prior to, reaching a final decision on a permit." *See* 36 MICHAEL F. CONNELLY, WASHINGTON PRACTICE: WASHINGTON LAND USE § 7:3, at 266 (2017-18). For instance, in *WCHS, Inc. v. City of Lynnwood*, 120 Wn. App. 668, 680, 86 P.3d 1169 (2004), Division One held that letters from the city—that informed an applicant for a building permit and a business license that his applications were incomplete—were insufficient to constitute final orders and, thus, "[n]o exhaustion of administrative remedies arose." The *WCHS* court explained:

9

> [T]he Land Use Petition Act, chapter 36.70C RCW, provides the exclusive means for review of land use decisions. LUPA defines a "land use decision" as a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals. *But the dispute here is not about a "final" decision. It is about an interim decision made in the process of, but prior to, reaching a final decision on a permit. LUPA does not apply to interlocutory decisions.*

*Id.* (emphasis added) (footnotes omitted). Here, the application processing fee charge is a tangential interim decision made prior to reaching a final decision on a permit. Similar to *WCHS*, here, LUPA does not apply to such interim decision.

Further, in *Pacific Rock Environmental Enhancement Group v. Clark County*, 92 Wn. App. 777, 782, 964 P.2d 1211 (1998), Division Two held that "LUPA does not include an interlocutory procedural order within its definition of 'land use decision'"; accordingly, where such interlocutory order is at issue, the superior court "had no jurisdiction to review the order under LUPA." Division Two explained, "LUPA provides for review only of 'land use decisions,' a phrase that is defined and that does not include discovery orders." *Id.* Similarly, the definition of "land use decision" does not include an application processing fee, and LUPA does not apply here.

LUPA's Exception for Money Damages Claims Applies Here

Alternatively, in my view, even if we assume that the present case falls within LUPA's procedural requirements (a proposition with which I disagree), petitioners' suit would fall within the express money damages exception to LUPA contained in RCW 36.70C.030(1)(c). Relevant here is *Woods View II, LLC v. Kitsap County*, 188 Wn. App. 1, 352 P.3d 807, *review denied*, 184 Wn.2d 1015 (2015). Therein, Division Two rejected

10

the county's cross appeal, which asserted that LUPA applied to appellant's action seeking monetary compensation from the county's delayed issuance of permits but not challenging the land use decisions themselves. *Id.* at 24-25.

While LUPA provides that it is the exclusive remedy for land use decisions, *see* RCW 36.70C.030(1), LUPA expressly does not apply to "[c]laims provided by any law for monetary damages or compensation." RCW 36.70C.030(1)(c). Nevertheless, "a damage claim may still be controlled by LUPA *if* it is dependent on 'an interpretive decision regarding the application of a zoning ordinance.'" *Woods View II*, 188 Wn. App. at 24-25 (emphasis added) (quoting *Asche v. Bloomquist*, 132 Wn. App. 784, 801, 133 P.3d 475 (2006)). Further, even if an applicant obtains the requested permit approval, he still must file a LUPA appeal "*if* he intends to challenge the propriety of any *conditions* placed on issuance of the permit." *Id.* at 25 (emphasis added) (citing *James*, 154 Wn.2d at 590). But as Division Two explained in *Woods View II*, the case at issue was "not like *Asche* or *James.*" *Id.* This was so because petitioner "is not challenging the actual land use decisions below because it received all of the permits it asked for, nor is it challenging any conditions imposed." *Id.* Division Two explained that the case was analogous to *Lakey*, which "ruled that the appellants were not required to file a LUPA petition to pursue their claims for damages where the appellants were seeking only money compensation rather than a reversal or modification of a land use decision." *Id.* (citing *Lakey*, 176 Wn.2d at 927-28). Division Two held, "[A]ll [Woods View II] seeks is *damages* for the *delay* in rendering [the permit] decisions. In such a case, LUPA is not

11

a bar to the plaintiff's claims." *Id.*; *see also Libera v. City of Port Angeles*, 178 Wn. App. 669, 675 n.6, 316 P.3d 1064 (2013) (because appellant appeals dismissal of only his damages claim for intentional interference with business expectancy by government delay, LUPA does not apply).

Similar to *Woods View II*, the petitioners here received the permits they requested, their suit seeks only monetary compensation, and that determination does not require revisiting or disturbing the land use decision (permit issuance). Thus, RCW 36.70C.030(1)(c)'s exception applies and LUPA does not bar petitioners' suit for application fee overcharges claimed as a violation of RCW 82.02.020.[8]

CONCLUSION

I would hold that LUPA, chapter 36.70C RCW, does not apply to petitioners' suit seeking reimbursement for alleged overcharges concerning application fees charged by the County for processing petitioners' building and land use permit applications. In my

---

[8]The majority again relies on *James* in dismissing any application of the RCW 36.70C.030(1)(c) monetary damages exemption, stating, "[I]n *James*, we have already rejected the applicability of RCW 82.02.020 to the 'monetary damages' exception in LUPA in the wake of its enactment." Majority at 9. I disagree. In discussing RCW 82.02.020 this court stated in *James*, "Since we find that the County's imposition of impact fees *as a condition on the issuance of a building permit* is a land use decision, it necessarily follows that the procedures established by LUPA to challenge that decision dictate." *James*, 154 Wn.2d at 587 (emphasis added). Nothing in *James* precludes application of RCW 36.70C.030(1)(c)'s monetary damages exemption to the application processing fees in this case. As discussed above, the processing fees here are distinct from the impact fees in *James*; the application processing fees are not an inextricably linked condition to the final substantive land use decision. Further, the RCW 36.70C.030(1)(c) monetary damages exemption was not asserted in *James*, so this court did not address it. *See id.* at 586-87 ("At no time have the Developers argued they are not subject to the procedural requirements of LUPA because their claims fall within one of the exceptions enumerated in RCW 36.70C.030(1).").

12

view, such administrative processing fees are not land use decisions subject to LUPA.

Further, because petitioners seek only money damages, LUPA's express exemption for

such claims under RCW 36.70C.030(1)(c) applies. Accordingly, I would reverse the

Court of Appeals' affirmance of the trial court's application of LUPA to petitioner's suit

and remand for further proceedings.

For these reasons, I dissent.

Madsen, J.

_____